UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
ZOILA IGLESIAS, individually and as next friend
of J.R. and K.R. infants,

                Plaintiffs,                         08 Civ. 1595 (AKH)

      -against-                                 **AMENDED**
                                              **COMPLAINT**

JOHN MATTINGLY, individually and as Commissioner,
HELEN COLON, individually and as caseworker,
CARYNE MORENCY, individually and as supervisor;
TRACEY LISSIMORE, individually and as manager;
TAMIKA McCOY, individually and as caseworker,
FLORENCE UBA, individually and as supervisor,
LEAKE & WATTS SERVICES, Inc.,
LIANNE CLARK PARRIS, individually and caseworker,
ZOLA VIOLA, individually and as supervisor, COALITION
FOR HISPANIC FAMILY SERVICES, Inc.. CITY OF NEW
YORK, and GLADYS CARRION, as Commissioner,

                Defendants.
-----------------------------------------------------------------------------X

        Plaintiffs, appearing by their attorneys, Lansner & Kubitschek, hereby allege

against defendants as follows:

## I. PRELIMINARY STATEMENT

    1.      This is a civil rights action, pursuant to 42 U.S.C. §1983, in which

plaintiffs seek damages to redress the deprivation, under color of state law, of rights secured to

them under the Fourth and Fourteenth Amendments of the United States Constitution.  Plaintiffs

also seek damages for the deprivation of their rights under New York law.  Finally plaintiffs seek

declaratory and injunctive relief.  The action arose from defendants' illegal seizure and detention

of infant plaintiffs from plaintiffs without probable cause or due process of law, and defendants'

policy and practice of  violating constitutional rights in removing children from close blood

relatives who are serving as foster parents to the children by, among other things, promulgating unconstitutional regulations which, as applied to foster parents who are relatives (hereinafter "kinship foster parents"), fail to provide said relatives and children with due process prior or subsequent to removing the children from the relatives, for reasons other than reunifying the children with their parents or the existence of true emergencies.

## II. JURISDICTION AND VENUE

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. §1343, which provides for original jurisdiction over all actions brought pursuant to 42 U.S.C. §1983, and by 28 U.S.C. §1331, which provides jurisdiction over all cases brought pursuant to the Constitution and laws of the United States.  The Court has pendent jurisdiction over certain defendants and over plaintiffs' state law claims pursuant to 28 U.S.C.§ 1367.

3.      Venue is proper under 28 U.S.C. § 1391(b), in that plaintiff resides in the city and county of New York.

## III. CLASS ACTION ALLEGATIONS

4.      Plaintiff Zoila Iglesias brings this action for declaratory and injunctive relief on her own behalf, and, pursuant to Fed. R. Civ. P. 23(a) and (b)(2), on behalf of a class of similarly situated persons.  Upon information and belief, the class presently consists of more than 3000 persons.

5.      The class is defined as all relatives within the third of consanguinity to children, where said relatives are or have been licensed, certified, or approved as the foster parents of said children, and where the children are in the foster care of the Administration for Children's Services of the City of New York.

2

6.     The subclass is so numerous that joinder of all members is impracticable.

7.     There are questions of law and fact common to the subclass.

8.     Common questions of fact include:

a. Whether defendants have a policy or practice of removing children from their relatives who are serving as foster parents for said children, for reasons other than to reunify the children with their parents, without probable cause to believe that continuing in the care of said relatives presents an imminent danger to the children's life or health; and

b. Whether defendants have a policy or practice of removing children from relatives who are serving as foster parents for said children without due process of law, in the form of pre-removal hearings, and for reasons other than to reunify the children with their parents; and

c. Whether defendants have a policy or practice of not providing a full due process hearing after removing children from their relatives who are serving as foster parents for reasons other than to reunify the children with their parents; and

d. Whether defendants have a policy or practice of removing children from their relatives who are serving as foster parents for said children, for reasons other than to reunify the children with their parents, without investigating whether the children will be in danger if they remain with their relatives; and

e. Whether defendants City, Mattingly, and Johnson fail to provide adequate training to employees of the Administration for Children's Services in handling cases involving children who are living in the homes of relatives who are serving as foster parents.

9.     Common questions of law include:

3

a. Whether a policy of removing children from their relatives who are serving as foster parents to said children, for reasons other than to reunify the children with their parents, violates the constitutional rights of the relatives to the care and custody of the children, i.e., without probable cause to believe that continuing in the care of the relatives presents an imminent danger to the children's life or health; and

b. Whether the failure of defendants City, Mattingly, and Johnson to provide adequate training to employees of the Administration for Children's Services violates the constitutional rights of victims of relatives who are serving as foster parents to children; and

c. Whether 18 N.Y.C.R.R. §443.5 is unconstitutional as applied to foster parents who are relatives within the third degree of consanguinity to children, in failing to provide said relatives with full due process hearings prior to removing the children from the homes of the relatives for reasons other than reunifying the children with their parents; and

d. Whether 18 N.Y.C.R.R. § 358-5.6 is unconstitutional as applied to foster parents who are relatives within the third degree of consanguinity to children, in that it fails to provide said relatives with full due process hearings after the removal of the children from said relatives for reasons other than reunifying the children with their parents; and

e. Whether 18 N.Y.C.R.R. § 358-5.9 is unconstitutional as applied to foster parents who are relatives within the third degree of consanguinity to children, in that it fails to provide said relatives with full due process hearings after the removal of said children from said relatives for reasons other than reunifying the children with their parents.

## IV. PARTIES

10.    Plaintiff Zoila Iglesias resides in the State of New York, County of New

4

York.

11.     K.R., born December 26, 2001, is the granddaughter of plaintiff, the daughter of plaintiff's oldest son. From January 20, 2005, until February 6, 2008, and from February 15, 2008, until and including the present, adult plaintiff has been the kinship foster mother of K.R.

12.     J.R., born December 7, 2002, is the grandson of plaintiff, the son of plaintiff's oldest son, and the brother of K.R. From approximately April, 2005, until February 6, 2008, and from February 15, 2008, until and including the present, adult plaintiff has been the kinship foster mother of J.R. At all relevant times, K.R. and J.R. have been in the legal custody of the New York City Administration for Children's Services ("ACS").

13.     Defendant City of New York ("City") is a municipal corporation, incorporated pursuant to the laws of the State of New York.

14.     Defendant City's Administration for Children's Services ("ACS") is authorized by New York law to investigate reports of child abuse and neglect and to care for children in foster care, who are in the legal custody of the Commissioner of ACS.

15.     Defendant John Mattingly is Commissioner of ACS.

16.     As Commissioner of ACS, defendant Mattingly is responsible for making and/or approving policies for ACS, including the investigation of alleged child abuse or maltreatment, the emergency removal of children from their families and relatives, the supervision of children in foster care, and the training and supervision of ACS employees.

17.     As Commissioner of ACS, defendant Mattingly is responsible for ACS's compliance with the Constitution, statutes, regulations, and common law of the United States and

the State of New York.

18.     Upon information and belief, defendant Helen Colon is a caseworker employed by ACS and was assigned by defendant Mattingly to investigate allegations of child neglect involving plaintiff and, if necessary, to take steps to safeguard the infant plaintiffs.

19.     Upon information and belief, defendant Caryne Morency is a supervisor employed by ACS, who was assigned by defendant Mattingly to supervise defendant Colon.

20.     Upon information and belief, defendant Lissimore is employed by defendant Mattingly as a manager for ACS.

21.     Upon information and belief, defendant Lissimore was assigned by defendant Mattingly to supervise defendants Morency and Colon.

22.     Upon information and belief, ACS has, pursuant to a contract, entrusted defendant Leake & Watts Services, Inc. a foster care agency, with the care of infant plaintiffs.

23.     Defendant Leake & Watts Services, Inc., is a not-for-profit corporation organized under the laws of the State of New York and is an "authorized agency" as defined in New York Social Services Law §371.

24.     Defendant Leake & Watts Services, Inc., is in the business of providing foster care, under contract with defendant City of New York, to children who have been removed from their homes and placed in the care of the Commissioner of ACS.

25.     Upon information and belief, defendant Tamika McCoy is a caseworker employed by defendant Leake & Watts Services, Inc.

26.     Upon information and belief, defendant Florence Uba is a supervisor employed by defendant Leake & Watts Services, Inc.

6

27.    Upon information and belief, defendant Leake & Watts Services, Inc. assigned defendants McCoy and Uba to supervise the foster care placement of infant plaintiffs. .

28.    Upon information and belief, ACS has, pursuant to a contract, entrusted defendant Committee for Hispanic Family Services ("CHFS"), a foster care agency, with the care of infant plaintiffs, jointly with defendant Leake & Watts Services, Inc.

29.    Defendant CHFS is a not-for-profit corporation organized under the laws of the State of New York and is an "authorized agency" as defined in New York Social Services Law §371.

30.    Defendant CHFS is in the business of providing foster care, under contract with defendant City of New York, to children who have been removed from their homes and placed in the care of the Commissioner of ACS.

31.    Upon information and belief, defendant Lianne Clark Parris is a caseworker employed by defendant CHFS.

32.    Upon information and belief, defendant CHFS assigned defendant Parris to supervise the foster care placement of infant plaintiffs.

33.    Upon information and belief, defendant Zola Viola is a supervisor employed by defendant CHFS.

34.    Upon information and belief, defendant CHFS assigned defendant Viola to supervise defendant Parris.

35.    Defendant Gladys Carrion is the Commissioner of the Office of Children and Family Services of the State of New York ("OCFS").  As Commissioner, defendant Carrion is responsible for the administration, regulation, and supervision of the foster care system in the

7

State of New York. Defendant Carrion is also responsible for providing training to employees of the local child welfare agencies with regard to the foster care of children.

IV. FACTS

36.     Infant plaintiff K.R. entered foster care in January, 2005, because her father, who is plaintiff's son, and her mother were unable to care for K.R.

37.     Infant plaintiff J.R., who is K.R.'s brother, entered foster care in or about April, 2005, because his father and mother were unable to care for him.

38.     In addition to J.R. and K.R., plaintiff has also taken care of two of her other grandchildren for many years. Those two grandchildren, who are not parties to this action, are R.R. and A.Q.

39.     R.R., born October 28, 1994, has been in the legal custody of plaintiff since 1998. R.R. is the older brother of J.R. and K.R.

40.     A.Q., born August 28, 2004, has been in the legal custody of plaintiff all of his life. A.Q. is the son of plaintiff's second son, and the first cousin of J.R., K.R., and R.R.

41.      During the time that the four children have resided with plaintiff, plaintiff has provided the children with a safe and loving home. Plaintiff always made sure that the children were clean, well-fed, and well-dressed, and that the children received proper medical treatment and a lot of love.

42.     Infant plaintiffs and the other children in turn developed strong ties of love and affection with plaintiff. In fact, the entire family is very close, and the children developed strong ties of love and affection for their relatives as well.

43.     While infant plaintiffs were in plaintiff's care, adult plaintiff always

8

cooperated with the foster care agency and ACS.

44.    K.R.'s parents' rights have been terminated, and plaintiff is in the process of adopting K.R.

45.    On February 6, 2008, while plaintiff's youngest son was visiting plaintiff, police officers came to plaintiff's apartment and arrested both plaintiff's youngest son and plaintiff.

46.    The police officers took plaintiff to the precinct house of the Seventh Precinct, in lower Manhattan.

47.    The police officers also took all four children to the precinct house.

48.    After holding plaintiff for several hours, the police released plaintiff without filing any charges against plaintiff.

49.    Upon information and belief, the police filed charges against plaintiff's younger son, and all criminal charges were resolved with an adjournment in contemplation of dismissal.

50.    When plaintiff was released from jail, she attempted to retrieve her grandchildren.  Upon information and belief, the police had called the New York State Central Register of Child Abuse and Maltreatment, alleging that plaintiff had neglected the children, and had turned the children over to defendant City's ACS, which had taken the children into protective custody.

51.    The allegations against plaintiff were false.  At all times, plaintiff has provided exceptional, loving care to her grandchildren, and has never neglected them.

52.    Upon information belief, defendant Mattingly assigned defendant Colon to

9

investigate the charges against plaintiff, and defendants Morency and Lissimore to supervise the investigation.

53.    Defendants Colon, Morency, and Lissimore conducted a constitutionally inadequate investigation of the charges that plaintiff had neglected the children.

54.    Based upon said inadequate investigation, defendants Colon, Morency, and Lissimore decided to detain the infant plaintiffs, plus plaintiff's other two grandchildren, in the City's custody.

55.    When they removed infant plaintiffs from plaintiff, defendants Colon, Morency, and Lissimore did not provide plaintiff with any notice of removal stating the reasons for the removal, nor inform plaintiff of her right to contest the removal.

56.    After they were removed from plaintiffs' home, infant plaintiffs were separated and placed in two separate foster homes of strangers.

57.    On February 7, 2008, defendant Colon, with the knowledge and consent of defendants Morency and Lissimore, commenced child protective proceedings against plaintiff in the Family Court, New York County, charging that plaintiff had neglected R.R. and A.Q.

58.    On February 7, 2008, defendants sought a court order to continue detaining R.R. and A.Q. from plaintiff.  Defendants sought no court orders whatsoever with regard to the infant plaintiffs.

59.    On February 7, 2008, the Family Court held an emergency hearing on defendants' request for on order continuing the detention of R.R. and A.Q.  At the conclusion of the hearing, at which plaintiff, defendants City, Colon, Morency, and Lissimore, and the children appeared by counsel, presented evidence, and cross-examined witnesses, the Family Court

10

ordered defendants to return R.R. and A.Q. to plaintiff immediately.

60.     On February 8, 2008, defendants returned R.R. and A.Q. to plaintiff.

61.     None of the defendants have provided plaintiff or the infant plaintiffs with any notice or any opportunity to be heard with regard to the removal and detention of the infant plaintiffs from plaintiff.

62.     Defendants continued to detain infant plaintiffs from plaintiff.

63.     On February 13, 2008, a judge of the Family Court, Kings County, ordered defendants to return infant plaintiff K.R. to plaintiff.

64.     Defendants refused to comply with the order, and instead continued to detain infant plaintiffs K.R. and J.R. in government custody.

65.     Defendants continued to detain J.R. and K.R., without providing due process of law to plaintiff or infant plaintiffs J.R and K.R., until February 15, 2008

66.     Defendants refused to permit plaintiff and infant plaintiffs to see each other, or even to speak to each other by telephone between February 6, 2008, and February 15, 2008.

67.     Upon information and belief, defendant Carrion's regulations authorize local child protective services, including the City of New York, to remove and detain children from the grandparents who have cared for them, without due process of law, if the grandparents have been serving as foster parents to the grandchildren at the time of removal.

68.     Within ninety days after the claim upon arose, plaintiff caused a notice of claim in writing, sworn to by adult plaintiff, to be served upon defendant City of New York. More than 30 days have passed, and the claim has not been resolved.

11

V. FIRST CAUSE OF ACTION

69.      Plaintiffs reallege and incorporate by reference paragraphs 1 through 68 .

70.      Upon information and belief, defendants, City, Mattingly, Leake & Watts

Services, Inc., and CHFS,  have a policy of removing and detaining children from their blood

relatives in the first, second, or third degree without probable cause, without investigation, and

without due process of law, when the relatives are licensed as foster parents.  Said policy, and the

removal and detention effectuated pursuant to said policy and regulations, constituted an

unlawful interference with plaintiff's liberty interest in the care and custody of her grandchildren,

the infant plaintiffs herein, in violation of the Fourteenth Amendment to the United States

Constitution, and the Second Circuit's decision in <u>Rivera v. Marcus</u>, 696 F.2d 1016 (2d Cir.

1982).  Said policy, and its implementation, constitute gross deviations from acceptable

professional conduct.

71.      Upon information and belief, defendant Carrion has promulgated and/or

retained regulations regarding the removal of children from foster homes, specifically regulations

governing the so-called "Independent Review" of a removal decision, which do not require that

local governments provide relatives who serve as foster parents with due process of law prior to

or subsequent to the removal of children from said relatives.  *See* 18 N.Y.C.R.R. §443.5.

72.      Said regulations, and the removal and detention effectuated pursuant to

said policy and regulations, constituted an unlawful interference with plaintiffs' liberty interest in

the care and custody of her grandchildren, the infant plaintiffs herein, in violation of the

Fourteenth Amendment to the United States Constitution, and the Second Circuit's decision in

<u>Rivera v. Marcus</u>, 696 F.2d 1016 (2d Cir. 1982).  Said regulations, and their implementation,

12

constitute gross deviations from acceptable professional conduct and deliberate indifference on

the part of defendants Carrion, City, Mattingly, Leake & Watts Services, Inc., and CHFS to the

strong likelihood that these regulations would cause the removal of children from their relatives

without due process of law, in violation of the Fourteenth Amendment.

      73.     Upon information and belief, acting pursuant to said policy and

regulations, defendants Parris, Viola, McCoy, Uba, Colon, Morency, and Lissimore

recommended, removed, detained, and/or ratified the removal and detention of infant plaintiffs

from plaintiff without probable cause and without due process of law, in that they executed and

ratified the removal and detention:

      a. without probable cause to believe that continuing in the care of plaintiff

presented an imminent danger to infant plaintiffs' life or health;

      b. without probable cause to believe that plaintiff was unfit to care for infant

plaintiffs;

      c. without providing plaintiff or infant plaintiffs  constitutionally adequate prior

notice;

      d. without providing a predeprivation hearing to plaintiff or infant plaintiffs; and

      e. without providing plaintiff or infant plaintiffs a constitutionally adequate post-

deprivation remedy.

      74.     Upon information and belief, acting pursuant to said policy and

regulations, defendants Parris, Viola, Uba, McCoy, Colon, Morency, and Lissimore

recommended, removed, detained, and/or ratified the removal and detention of infant plaintiffs

from plaintiff without probable cause and without due process of law, in that they perpetuated the

13

detention of infant plaintiffs arbitrarily and capriciously and without articulating any basis for doing so.

75.     Upon information and belief, acting pursuant to said policy, all defendants, except defendant Carrion, detained infant plaintiffs in government custody, in the homes of strangers, separated from plaintiff and from each other, for nine days.  Upon information and belief, said detention has occurred pursuant to the regulations promulgated by defendant Carrion.

76.     In the alternative, defendants City, Mattingly, Leake & Watts Services, Inc., and CHFS failed to adopt policies requiring their employees to remove children only if they had probable cause to believe that continuing in the care of their relatives presents an imminent danger to the children's life or health, only if they provided due process of law to children and relatives, and only if they had investigated to determine said factors. Defendants City, Mattingly, Leake & Watts Services, Inc., and CHFS knew or should have known that said failure would cause those defendants' agents to remove and detain children without probable cause to believe that continuing in the care of their relative presents an imminent danger to the children's life or health and without due process of law, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

77.     Defendants City, Mattingly, Leake & Watts Services, Inc., and CHFS knew or should have known that their failure to adopt a policy regarding the removal of children from a non-offending relative would cause defendants' agents and employees to violate the relatives' rights to live together as a family without state intervention, contrary to the Fourteenth Amendment to the Constitution.

78.     Defendants City, Mattingly, Leake & Watts Services, Inc., and CHFS have

14

provided grossly inadequate and unprofessional training and supervision to their employees regarding the removal and detention of children from relatives who are licensed as foster parents, the making of probable cause determinations, and the provision of due process of law to such relatives.

79.     Defendants City, Mattingly, Leake & Watts Services, Inc., and CHFS knew or should have known that their employees were improperly trained and supervised in those areas.

80.     As a result of the defendants' actions, plaintiff suffered the loss of the love and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their grandmother, their siblings, their cousin, and each other, plaintiff incurred legal and other expenses, and plaintiff and infant plaintiffs suffered extreme pain and suffering, terror, mental anguish, and depression.

## VI. SECOND CAUSE OF ACTION

81.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 80.

82.     Upon information and belief, defendants City, Mattingly, Leake & Watts Services, Inc., and CHFS have a policy and practice of removing and detaining children from their relatives without probable cause and without due process of law, and for purposes other than returning the children to their parents, even though the relatives have not abused or neglected their children, when the relatives are licensed as foster parents for the children.

83.     Acting pursuant to said policy, and without probable cause or due process of law, defendants Parris, Viola, McCoy, Uba, Colon, Morency, and Lissimore recommended, removed, detained, and/or ratified the removal and detention of infant plaintiffs from plaintiff.

15

84.    Said policy, and the removal and detention pursuant to said policy, constitutes an unlawful interference with plaintiff's liberty interest in the care and custody of her grandchildren, and her right to associate with her grandchildren, in violation of the First and Fourteenth Amendments to the United States Constitution.  Said policy, and its implementation, are gross deviations from acceptable professional conduct.

85.    Defendants City, Mattingly, Leake & Watts Services, Inc., and CHFS knew or should have known that their failure to adopt a policy requiring their employees to remove children only if probable cause existed would cause their agents and employees to remove and detain children without probable cause, in violation of the Fourth and Fourteenth Amendments to the Constitution.

86.    Defendants City and Mattingly knew or should  have known that their failure to adopt a policy requiring their employees to afford relatives who are foster parents due process of law in connection with the removal of their children would cause their agents and employees to remove and detain children without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

87.    As a result of the defendants' actions, plaintiff suffered the loss of the love and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their grandmother, plaintiff incurred legal and other expenses, and plaintiff and infant plaintiffs suffered extreme pain and suffering, terror, mental anguish, and depression.

## VII. THIRD CAUSE OF ACTION

88.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 87.

89.    Upon information and belief, defendant Carrion has retained and currently

oversees implementation of administrative fair hearing procedures for adjudicating kinship foster parents' appeals to OCFS of decisions to remove foster children from the homes of said kinship foster parents for reasons other than reunifying the children with their parents. *See* 18 N.Y.C.R.R. §§ 358-5.6, 358-5.9, 403.6.

90.    Upon information and belief, in implementing said procedures, defendant Carrion has a policy or practice to unnecessarily delay commencing, completing, and deciding administrative hearings on kinship foster parents' appeals of the removals of foster children.

91.    Upon information and belief, defendant Carrion has a policy or practice of refusing to return children to kinship foster parents, even if they win their administrative hearings.

92.    Defendant Carrion's policy or practice constitutes an unlawful interference with plaintiff's and infant plaintiffs' liberty interest in their relationship with each other, and their right of intimate association, in violation of the First and Fourteenth Amendment to the United States Constitution.

93.    As a result of the defendants' actions, plaintiff suffered the loss of the love and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their grandmother, plaintiff incurred legal and other expenses, and plaintiffs and infant plaintiffs suffered extreme pain and suffering, terror, mental anguish, and depression.

## VIII. FOURTH CAUSE OF ACTION

94.    Plaintiff reallege and incorporate by reference paragraphs 1 through 93.

95.    Upon information and belief, in issuing administrative hearing decisions, it is defendant Carrion's policy and practice not to require the return of foster children to their

relatives' care upon finding that the children's removals were improper.

96.    The administrative hearing procedures established by defendant Carrion

for kinship foster parents thus do not provide said kinship foster parents with a meaningful post-

deprivation remedy and thus deprive said kinship foster parents of due process of law.

97.    Said administrative fair hearing procedures, and the application of said

procedures to plaintiff, constitute an unlawful interference with plaintiff's liberty interest in the

care and custody of her grandchidlren, the infant plaintiffs herein, in violation of the Fourteenth

Amendment to the United States Constitution and the Second Circuit's decision in Rivera v.

Marcus, 696 F.2d 1016 (2d Cir. 1982).

98.    Upon information and belief, defendant Carrion, despite her awareness of

the Second Circuit's decision in Rivera v. Marcus, 696 F.2d 1016 (2d Cir. 1982), has never

instructed her employees and designees to comply with said decision.

99.    Instead, upon information and belief, defendant Carrion has a policy or

practice of ignoring the law of this Circuit, as enunciated in said decision.

100.    As a result of the defendants' actions, plaintiff suffered the loss of the love

and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their

grandmother, plaintiff incurred legal and other expenses, and plaintiff and infant plaintiffs

suffered extreme pain and suffering, terror, mental anguish, and depression.

## IX. FIFTH CAUSE OF ACTION

101.    Plaintiff realleges and incorporates by reference paragraphs 1 through 100.

102.    Upon information and belief, defendant Carrion has authorized the

application of New York State Department of Social Services regulations regarding

18

administrative fair hearings to kinship foster parents' appeals to OCFS of decisions to remove foster children from the homes of said kinship foster parents for reasons other than reunifying the children with their parents. *See* 18 N.Y.C.R.R. §§ 358-5.6, 358-5.9, 403.6. The application of these regulations to kinship foster parents' administrative hearings deprives said kinship foster parents of due process of law in that:

a. the foster care agency and local government child welfare department need only support the propriety of a removal with substantial evidence, rather than by clear and convincing or a preponderance of the evidence, *see* 18 N.Y.C.R.R. § 358-5.9; and

b. the final decision maker is not the trier of fact and thus makes credibility determinations on witnesses that he or she did not actually observe, *see* 18 N.Y.C.R.R. § 358-5.6; and

c. the Commissioner of OCFS, an interested party, or her designee, makes the final decision instead of a neutral arbiter, *see* 18 N.Y.C.R.R. § 358-5.6; and

d. kinship foster parents do not have the right to confront all the witnesses against them, *see* 18 N.YC.R.R. § 358-5.9; and

e. kinship foster parents have no right to counsel at said hearing; and

f. the decision-maker is not a judge; and

g. kinship foster parents are not entitled to notice of the charges against them; and

h. the standard for separating children from kinship foster parents is not unfitness, as required by the Fourteenth Amendment of the United States Constitution; and

i. the standard for separating children from kinship foster parents is not child neglect or abuse, as required by Article 10 of the New York Family Court Act; and

j. kinship foster parents do not have the right to secure the return of their foster children at said hearings, even if they prevail on the merits of their claims.

103.    Said hearing procedures, and the adjudication pursuant to said procedures, deprive plaintiffs of substantive and procedural due process of law, in violation of the Fourteenth Amendment of the United States Constitution and the Second Circuit's decision in <u>Rivera v. Marcus</u>, 696 F.2d 1016 (2d Cir. 1982).

104.    As a result of the defendants' actions, plaintiff suffered the loss of the love and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their grandmother, plaintiff incurred legal and other expenses, and plaintiffs and infant plaintiffs suffered extreme pain and suffering, terror, mental anguish, and depression.

## X. SIXTH CAUSE OF ACTION

105.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 104.

106.    In removing and detaining infant plaintiffs from plaintiff, defendants City, Mattingly, Colon, Morency, and Lissimore violated infant plaintiffs' right to be free of unlawful searches and seizures, protected by the Fourth Amendment of the United States Constitution.

107.    In failing to order City defendants to return infant plaintiffs to plaintiff's care, defendant Carrion violated infant plaintiffs' right  be free of unlawful searches and seizures, protected by the Fourth Amendment of the United States Constitution.

108.    As a result of the defendants' actions, plaintiff suffered the loss of the love and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their grandmother, plaintiff incurred legal and other expenses, and plaintiff and infant plaintiffs suffered extreme pain and suffering, terror, mental anguish, and depression.

20

## XI. SEVENTH CAUSE OF ACTION

109.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 108.

110.    By removing and detaining infant plaintiffs from plaintiff, all defendants other than defendant Carrion unlawfully interfered with plaintiff's custody of her grandchildren.

111.    By restricting visitation between plaintiff and infant plaintiffs, all defendants other than defendant Carrion unlawfully interfered with plaintiff's custody of her grandchildren.

112.    As a result of the defendants' actions, plaintiff suffered the loss of the love and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their grandmother, plaintiff incurred legal and other expenses, and plaintiff and infant plaintiffs suffered extreme pain and suffering, terror, mental anguish, and depression.

## XII. EIGHTH CAUSE OF ACTION

113.    Plaintiffs reallege and incorporates by reference paragraphs 1 through 112.

114.    All of the defendants had a duty to act with reasonable care toward plaintiff and with the highest degree of care toward infant plaintiffs.

115.    In removing and detaining infant plaintiffs and in failing to order the immediate return of infant plaintiff, all defendants breached said duties and grossly deviated from accepted professional standards.

116.    As a result of the defendants' actions, plaintiff suffered the loss of the love and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their grandmother, plaintiff incurred legal and other expenses, and plaintiff and infant plaintiffs suffered extreme pain and suffering, terror, mental anguish, and depression.

21

WHEREFORE plaintiffs respectfully request that judgment be entered:

1. Declaring unconstitutional defendants' removal and detention of infant plaintiffs from plaintiff's care;

3. Enjoining defendants from removing  J.R. and K.R. from plaintiff, except for the purpose of reuniting them with their parents; and

3. Declaring unconstitutional 18 N.Y.C.R.R. §443.5, to the extent that it permits the removal of children from kinship foster parents without providing due process of law in the form of a constitutionally adequate pre-deprivation or post-deprivation hearing, when the removals are for purposes other than reunifying the children with their parents; and

4. Declaring unconstitutional defendant Carrion's administrative hearing procedures for reviewing removals of children from their kinship foster parents, to the extent that these procedures permit the removal of children from kinship foster parents without providing due process of law in the form of a timely and meaningful post-deprivation remedy, when the removals are for purposes other than reunifying the children with their parents; and

5. Declaring unconstitutional defendants' policies, practices, and regulations of removing children from kinship foster parents without providing due process of law in the form of a constitutionally adequate pre-deprivation or post-deprivation hearing to subclass members; and

6. Declaring unconstitutional 18 N.Y.C.R.R. §443.5, to the extent that it permits the removal of children from kinship foster parents without providing due process of law in the form of a constitutionally adequate pre-deprivation or post-deprivation hearing to kinship foster parents, when the removals are for purposes other than reunifying the children with their parents;

22

and

      7.  Declaring unconstitutional 18 N.Y.C.R.R. §§358-5.6 and 358-5.9 as applied to kinship foster parents challenging the removal of children from kinship foster parents, to the extent that the administrative hearing procedures contained therein permit the removal of children from kinship foster parents without providing due process of law in the form of constitutionally adequate pre-deprivation or post-deprivation hearings to subclass members, when the removals are for purposes other than reunifying the children with their parents; and

      8. Preliminarily and permanently enjoining defendants' regulations and policy and practice of removing children from kinship foster parents without providing due process of law in the form of constitutionally adequate pre-deprivation and post-deprivation hearings to subclass members; and

      9. Preliminarily and permanently enjoining the application of 18 N.Y.C.R.R. §§358-5.6 and 358-5.9 to kinship foster parents challenging the removal of children from their homes, to the extent that the administrative hearing procedures contained in said regulations permit the removal of children from the homes of subclass members without providing due process of law in the form of a constitutionally adequate pre-deprivation and post-deprivation hearings to subclass members, when the removals are for purposes other than reunifying the children with their parents; and

      10. Preliminarily and permanently enjoining defendants from removing the children from kinship foster parents unless foster parents are unfit to care for the children, except for the purpose of reunification with parents.

      11. Awarding plaintiff and infant plaintiffs reasonable compensatory and punitive

23

damages in a sum to be determined by the court; and

12. Awarding plaintiff and infant plaintiffs interest from February 6, 2008; and

13. Awarding plaintiff and the infant plaintiffs reasonable attorney fees pursuant

to 42 U.S.C. §1988; and

14. Granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
          March 20, 2008

Carolyn A. Kubitschek (CK6415)
Lansner & Kubitschek
Attorneys for Plaintiffs
325 Broadway, Suite 201
New York, New York 10007
(212) 349-0900
Ckubitschek@lanskub.com

24

constitute gross deviations from acceptable professional conduct and deliberate indifference on

the part of defendants Carrion, City, Mattingly, Leake & Watts Services, Inc., and CHFS to the

strong likelihood that these regulations would cause the removal of children from their relatives

without due process of law, in violation of the Fourteenth Amendment.

       73.    Upon information and belief, acting pursuant to said policy and

regulations, defendants Parris, Viola, McCoy, Uba, Colon, Morency, and Lissimore

recommended, removed, detained, and/or ratified the removal and detention of infant plaintiffs

from plaintiff without probable cause and without due process of law, in that they executed and

ratified the removal and detention:

       a. without probable cause to believe that continuing in the care of plaintiff

presented an imminent danger to infant plaintiffs' life or health;

       b. without probable cause to believe that plaintiff was unfit to care for infant

plaintiffs;

       c. without providing plaintiff or infant plaintiffs constitutionally adequate prior

notice;

       d. without providing a predeprivation hearing to plaintiff or infant plaintiffs; and

       e. without providing plaintiff or infant plaintiffs a constitutionally adequate post-

deprivation remedy.

       74.    Upon information and belief, acting pursuant to said policy and

regulations, defendants Parris, Viola, Uba, McCoy, Colon, Morency, and Lissimore

recommended, removed, detained, and/or ratified the removal and detention of infant plaintiffs

from plaintiff without probable cause and without due process of law, in that they perpetuated the

detention of infant plaintiffs arbitrarily and capriciously and without articulating any basis for doing so.

75.    Upon information and belief, acting pursuant to said policy, all defendants, except defendant Carrion, detained infant plaintiffs in government custody, in the homes of strangers, separated from plaintiff and from each other, for nine days.  Upon information and belief, said detention has occurred pursuant to the regulations promulgated by defendant Carrion.

76.    In the alternative, defendants City, Mattingly, Leake & Watts Services, Inc., and CHFS failed to adopt policies requiring their employees to remove children only if they had probable cause to believe that continuing in the care of their relatives presents an imminent danger to the children's life or health, only if they provided due process of law to children and relatives, and only if they had investigated to determine said factors. Defendants City, Mattingly, Leake & Watts Services, Inc., and CHFS knew or should have known that said failure would cause those defendants' agents to remove and detain children without probable cause to believe that continuing in the care of their relative presents an imminent danger to the children's life or health and without due process of law, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

77.    Defendants City, Mattingly, Leake & Watts Services, Inc., and CHFS knew or should have known that their failure to adopt a policy regarding the removal of children from a non-offending relative would cause defendants' agents and employees to violate the relatives' rights to live together as a family without state intervention, contrary to the Fourteenth Amendment to the Constitution.

78.    Defendants City, Mattingly, Leake & Watts Services, Inc., and CHFS have

14

provided grossly inadequate and unprofessional training and supervision to their employees regarding the removal and detention of children from relatives who are licensed as foster parents, the making of probable cause determinations, and the provision of due process of law to such relatives.

79.     Defendants City, Mattingly, Leake & Watts Services, Inc., and CHFS knew or should have known that their employees were improperly trained and supervised in those areas.

80.     As a result of the defendants' actions, plaintiff suffered the loss of the love and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their grandmother, their siblings, their cousin, and each other, plaintiff incurred legal and other expenses, and plaintiff and infant plaintiffs suffered extreme pain and suffering, terror, mental anguish, and depression.

## VI. SECOND CAUSE OF ACTION

81.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 80.

82.     Upon information and belief, defendants City, Mattingly, Leake & Watts Services, Inc., and CHFS have a policy and practice of removing and detaining children from their relatives without probable cause and without due process of law, and for purposes other than returning the children to their parents, even though the relatives have not abused or neglected their children, when the relatives are licensed as foster parents for the children.

83.     Acting pursuant to said policy, and without probable cause or due process of law, defendants Parris, Viola, McCoy, Uba, Colon, Morency, and Lissimore recommended, removed, detained, and/or ratified the removal and detention of infant plaintiffs from plaintiff.

15

84.    Said policy, and the removal and detention pursuant to said policy, constitutes an unlawful interference with plaintiff's liberty interest in the care and custody of her grandchildren, and her right to associate with her grandchildren, in violation of the First and Fourteenth Amendments to the United States Constitution. Said policy, and its implementation, are gross deviations from acceptable professional conduct.

85.    Defendants City, Mattingly, Leake & Watts Services, Inc., and CHFS knew or should have known that their failure to adopt a policy requiring their employees to remove children only if probable cause existed would cause their agents and employees to remove and detain children without probable cause, in violation of the Fourth and Fourteenth Amendments to the Constitution.

86.    Defendants City and Mattingly knew or should have known that their failure to adopt a policy requiring their employees to afford relatives who are foster parents due process of law in connection with the removal of their children would cause their agents and employees to remove and detain children without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

87.    As a result of the defendants' actions, plaintiff suffered the loss of the love and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their grandmother, plaintiff incurred legal and other expenses, and plaintiff and infant plaintiffs suffered extreme pain and suffering, terror, mental anguish, and depression.

## VII. THIRD CAUSE OF ACTION

88.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 87.

89.    Upon information and belief, defendant Carrion has retained and currently

16

oversees implementation of administrative fair hearing procedures for adjudicating kinship foster parents' appeals to OCFS of decisions to remove foster children from the homes of said kinship foster parents for reasons other than reunifying the children with their parents. *See* 18 N.Y.C.R.R. §§ 358-5.6, 358-5.9, 403.6.

90.    Upon information and belief, in implementing said procedures, defendant Carrion has a policy or practice to unnecessarily delay commencing, completing, and deciding administrative hearings on kinship foster parents' appeals of the removals of foster children.

91.    Upon information and belief, defendant Carrion has a policy or practice of refusing to return children to kinship foster parents, even if they win their administrative hearings.

92.    Defendant Carrion's policy or practice constitutes an unlawful interference with plaintiff's and infant plaintiffs' liberty interest in their relationship with each other, and their right of intimate association, in violation of the First and Fourteenth Amendment to the United States Constitution.

93.    As a result of the defendants' actions, plaintiff suffered the loss of the love and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their grandmother, plaintiff incurred legal and other expenses, and plaintiffs and infant plaintiffs suffered extreme pain and suffering, terror, mental anguish, and depression.

## VIII. FOURTH CAUSE OF ACTION

94.    Plaintiff reallege and incorporate by reference paragraphs 1 through 93.

95.    Upon information and belief, in issuing administrative hearing decisions, it is defendant Carrion's policy and practice not to require the return of foster children to their

17

relatives' care upon finding that the children's removals were improper.

96.    The administrative hearing procedures established by defendant Carrion

for kinship foster parents thus do not provide said kinship foster parents with a meaningful post-

deprivation remedy and thus deprive said kinship foster parents of due process of law.

97.    Said administrative fair hearing procedures, and the application of said

procedures to plaintiff, constitute an unlawful interference with plaintiff's liberty interest in the

care and custody of her grandchidlren, the infant plaintiffs herein, in violation of the Fourteenth

Amendment to the United States Constitution and the Second Circuit's decision in Rivera v.

Marcus, 696 F.2d 1016 (2d Cir. 1982).

98.    Upon information and belief, defendant Carrion, despite her awareness of

the Second Circuit's decision in Rivera v. Marcus, 696 F.2d 1016 (2d Cir. 1982), has never

instructed her employees and designees to comply with said decision.

99.    Instead, upon information and belief, defendant Carrion has a policy or

practice of ignoring the law of this Circuit, as enunciated in said decision.

100.    As a result of the defendants' actions, plaintiff suffered the loss of the love

and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their

grandmother, plaintiff incurred legal and other expenses, and plaintiff and infant plaintiffs

suffered extreme pain and suffering, terror, mental anguish, and depression.

## IX. FIFTH CAUSE OF ACTION

101.    Plaintiff realleges and incorporates by reference paragraphs 1 through 100.

102.    Upon information and belief, defendant Carrion has authorized the

application of New York State Department of Social Services regulations regarding

18

administrative fair hearings to kinship foster parents' appeals to OCFS of decisions to remove

foster children from the homes of said kinship foster parents for reasons other than reunifying the

children with their parents.  *See* 18 N.Y.C.R.R. §§ 358-5.6, 358-5.9, 403.6.  The application of

these regulations to kinship foster parents' administrative hearings deprives said kinship foster

parents of due process of law in that:

      a.  the foster care agency and local government child welfare department need

only support the propriety of a removal with substantial evidence, rather than by clear and

convincing or a preponderance of the evidence, *see* 18 N.Y.C.R.R. § 358-5.9; and

      b. the final decision maker is not the trier of fact and thus makes credibility

determinations on witnesses that he or she did not actually observe, *see* 18 N.Y.C.R.R. § 358-5.6;

and

      c.  the Commissioner of OCFS, an interested party, or her designee, makes the

final decision instead of a neutral arbiter, *see* 18 N.Y.C.R.R. § 358-5.6; and

      d. kinship foster parents do not have the right to confront all the witnesses against

them, *see* 18 N.YC.R.R. § 358-5.9; and

      e. kinship foster parents have no right to counsel at said hearing; and

      f. the decision-maker is not a judge; and

      g. kinship foster parents are not entitled to notice of the charges against them; and

      h. the standard for separating children from kinship foster parents is not unfitness,

as required by the Fourteenth Amendment of the United States Constitution; and

      i. the standard for separating children from kinship foster parents is not child

neglect or abuse, as required by Article 10 of the New York Family Court Act; and

j. kinship foster parents do not have the right to secure the return of their foster children at said hearings, even if they prevail on the merits of their claims.

103.    Said hearing procedures, and the adjudication pursuant to said procedures, deprive plaintiffs of substantive and procedural due process of law, in violation of the Fourteenth Amendment of the United States Constitution and the Second Circuit's decision in Rivera v. Marcus, 696 F.2d 1016 (2d Cir. 1982).

104.    As a result of the defendants' actions, plaintiff suffered the loss of the love and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their grandmother, plaintiff incurred legal and other expenses, and plaintiffs and infant plaintiffs suffered extreme pain and suffering, terror, mental anguish, and depression.

## X. SIXTH CAUSE OF ACTION

105.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 104.

106.    In removing and detaining infant plaintiffs from plaintiff, defendants City, Mattingly, Colon, Morency, and Lissimore violated infant plaintiffs' right to be free of unlawful searches and seizures, protected by the Fourth Amendment of the United States Constitution.

107.    In failing to order City defendants to return infant plaintiffs to plaintiff's care, defendant Carrion violated infant plaintiffs' right  be free of unlawful searches and seizures, protected by the Fourth Amendment of the United States Constitution.

108.    As a result of the defendants' actions, plaintiff suffered the loss of the love and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their grandmother, plaintiff incurred legal and other expenses, and plaintiff and infant plaintiffs suffered extreme pain and suffering, terror, mental anguish, and depression.

20

## XI. SEVENTH CAUSE OF ACTION

109.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 108.

110.    By removing and detaining infant plaintiffs from plaintiff, all defendants other than defendant Carrion unlawfully interfered with plaintiff's custody of her grandchildren.

111.    By restricting visitation between plaintiff and infant plaintiffs, all defendants other than defendant Carrion unlawfully interfered with plaintiff's custody of her grandchildren.

112.    As a result of the defendants' actions, plaintiff suffered the loss of the love and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their grandmother, plaintiff incurred legal and other expenses, and plaintiff and infant plaintiffs suffered extreme pain and suffering, terror, mental anguish, and depression.

## XII. EIGHTH CAUSE OF ACTION

113.    Plaintiffs reallege and incorporates by reference paragraphs 1 through 112.

114.    All of the defendants had a duty to act with reasonable care toward plaintiff and with the highest degree of care toward infant plaintiffs.

115.    In removing and detaining infant plaintiffs and in failing to order the immediate return of infant plaintiff, all defendants breached said duties and grossly deviated from accepted professional standards.

116.    As a result of the defendants' actions, plaintiff suffered the loss of the love and services of her grandchildren, infant plaintiffs suffered the loss of the love and care of their grandmother, plaintiff incurred legal and other expenses, and plaintiff and infant plaintiffs suffered extreme pain and suffering, terror, mental anguish, and depression.

21

WHEREFORE plaintiffs respectfully request that judgment be entered:

1. Declaring unconstitutional defendants' removal and detention of infant plaintiffs from plaintiff's care;

3. Enjoining defendants from removing  J.R. and K.R. from plaintiff, except for the purpose of reuniting them with their parents; and

3. Declaring unconstitutional 18 N.Y.C.R.R. §443.5, to the extent that it permits the removal of children from kinship foster parents without providing due process of law in the form of a constitutionally adequate pre-deprivation or post-deprivation hearing, when the removals are for purposes other than reunifying the children with their parents; and

4. Declaring unconstitutional defendant Carrion's administrative hearing procedures for reviewing removals of children from their kinship foster parents, to the extent that these procedures permit the removal of children from kinship foster parents without providing due process of law in the form of a timely and meaningful post-deprivation remedy, when the removals are for purposes other than reunifying the children with their parents; and

5. Declaring unconstitutional defendants' policies, practices, and regulations of removing children from kinship foster parents without providing due process of law in the form of a constitutionally adequate pre-deprivation or post-deprivation hearing to subclass members; and

6. Declaring unconstitutional 18 N.Y.C.R.R. §443.5, to the extent that it permits the removal of children from kinship foster parents without providing due process of law in the form of a constitutionally adequate pre-deprivation or post-deprivation hearing to kinship foster parents, when the removals are for purposes other than reunifying the children with their parents;

22

and

7.  Declaring unconstitutional 18 N.Y.C.R.R. §§358-5.6 and 358-5.9 as applied to kinship foster parents challenging the removal of children from kinship foster parents, to the extent that the administrative hearing procedures contained therein permit the removal of children from kinship foster parents without providing due process of law in the form of constitutionally adequate pre-deprivation or post-deprivation hearings to subclass members, when the removals are for purposes other than reunifying the children with their parents; and

8. Preliminarily and permanently enjoining defendants' regulations and policy and practice of removing children from kinship foster parents without providing due process of law in the form of constitutionally adequate pre-deprivation and post-deprivation hearings to subclass members; and

9. Preliminarily and permanently enjoining the application of 18 N.Y.C.R.R. §§358-5.6 and 358-5.9 to kinship foster parents challenging the removal of children from their homes, to the extent that the administrative hearing procedures contained in said regulations permit the removal of children from the homes of subclass members without providing due process of law in the form of a constitutionally adequate pre-deprivation and post-deprivation hearings to subclass members, when the removals are for purposes other than reunifying the children with their parents; and

10. Preliminarily and permanently enjoining defendants from removing the children from kinship foster parents unless foster parents are unfit to care for the children, except for the purpose of reunification with parents.

11. Awarding plaintiff and infant plaintiffs reasonable compensatory and punitive

23

damages in a sum to be determined by the court; and

       12. Awarding plaintiff and infant plaintiffs interest from February 6, 2008; and

       13. Awarding plaintiff and the infant plaintiffs reasonable attorney fees pursuant

to 42 U.S.C. §1988; and

       14. Granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      March 20, 2008

                              Carolyn A. Kubitschek (CK6415)
                              Lansner & Kubitschek
                              Attorneys for Plaintiffs
                              325 Broadway, Suite 201
                              New York, New York 10007
                              (212) 349-0900
                              Ckubitschek@lanskub.com