UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ZOILA IGLESIAS, etc. et al,

                Plaintiffs,           **08 Civ. 1595 (AKH)**
                                                        **(ECF CASE)**

                - against -

JOHN MATTINGLY, etc. et al,

                Defendants.
------------------------------------------------------------------------X

## STATE DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT AGAINST HER

                                                      ANDREW M. CUOMO
                                                      Attorney General of the State of New York
                                                      <u>Attorney for State defendant</u>
                                                        120 Broadway, 24th Floor
                                                        New York, New York 10271
                                                        (212) 416-8632

ROBERT L. KRAFT
Assistant Attorney General
<u>of</u> <u>Counsel</u>

**Table of Contents**

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A.  THE FOSTER CARE RELATIONSHIP IS A TEMPORARY CONTRACTUAL ARRANGEMENT TO PROVIDE PAID CARE FOR CHILDREN WHO HAVE BEEN REMOVED FROM BIRTH PARENTS PENDING RETURN TO THEIR PARENTS OR OTHER PERMANENT PLACEMENT . . . . . . . . . . . . 3

B.  STATE LAW AND REGULATIONS REGARDING THE REMOVAL OF FOSTER CHILDREN FROM THE CARE OF FOSTER PARENTS . . . . . . . . 5

1.  LOCAL AGENCY PROCEDURES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

2.  STATE FAIR HEARING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

C.  ALLEGATIONS IN The Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

POINT I     THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTI-TUTION BARS THIS COURT FROM ENTERTAINING PLAINTIFF'S CLAIMS AGAINST STATE DEFENDANT FOR MONETARY RELIEF, ALLEGED STATE LAW VIOLATIONS, AND FOR A DECLARATORY JUDGMENT REGARDING PAST CONDUCT . . . . . . . . . . . . . . . . . . . . . . . . 8

POINT II    Iglesias'S CLAIMS AGAINST STATE DEFENDANT MUST BE DIS-MISSED AGAINST STATE DEFENDANT FOR LACK OF AN ARTICLE III CASE OR CONTROVERSY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

POINT III   The Amended Complaint DOES NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST STATE DEFENDANT . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ZOILA IGLESIAS, individually and as next friend
of J.R. and K.R. infants,

                           Plaintiffs,                      **08 Civ. 1595 (AKH)**
                                                                     **(ECF CASE)**

                         - against -

JOHN MATTINGLY, individually and as Commissioner,
HELEN COLON, individually and as caseworker,
CARYNE MORENCY, individually and as supervisor,
TRACEY LISSIMORE, individually and as manager,
TAMIKA McCOY, individually and as caseworker,
FLORENCE UBA, individually and as supervisor,
LEAKE & WATTS SERVICES, Inc.,
LIANNE CLARK PARRIS, individually and caseworker,
ZOLA VIOLA, individually and as supervisor,
COALITION FOR HISPANIC FAMILY SERVICES, Inc.,
CITY OF NEW YORK,
and GLADYS CARRION, as Commissioner,

                           Defendants.
------------------------------------------------------------------------X

**STATE DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS The Amended Complaint AGAINST HER**

**PRELIMINARY STATEMENT**

This memorandum of law is respectfully submitted on behalf of defendant Gladys Carrión, Esq. ("State defendant"), sued as Commissioner of the New York State Office of Children and Family Services ("OCFS"), in support of her motion to dismiss the Amended Complaint dated March 20, 2008 ("Amended Complaint").[1]  Plaintiff, ZOILA IGLESIAS ("Iglesias"), individually and purportedly on behalf of her minor grandchildren who reside with her as foster children,[2] brings this 42 U.S.C. § 1983 action seeking monetary and injunctive relief based on the February 6, 2008, removal of her foster children from her home by non-party police officers and the return of her children to her foster home by other defendants on February 15, 2008, as a result of a Family Court Order.

As discussed in Point I below, the Eleventh Amendment to the Constitution of the United States bars plaintiffs from seeking monetary relief against State defendant, from seeking relief against State defendant for alleged State law violations, and from seeking a declaratory judgment regarding past conduct.  As discussed in Points II and III below, whatever claims remain against State defendant, i.e., for prospective injunctive relief based on the removal and later return of the foster children, by non-parties and/or other defendants, must be dismissed because they fail to state an Article III "case or controversy" or otherwise a claim for relief against State defendant.

---

[1] On information and belief the Amended Complaint is the initial complaint served in this action.

[2] Under New York law, Iglesias does not have legal custody of the foster children, footnote 3 infra, and may not bring suit on their behalf.  While this motion primarily addresses the claims of Iglesias, it also addresses the claims purportedly brought on behalf of the foster children to the extent raised in the Amended Complaint.

2

**STATEMENT OF THE CASE**

A. **THE FOSTER CARE RELATIONSHIP IS A TEMPORARY CONTRACTUAL ARRANGEMENT TO PROVIDE PAID CARE FOR CHILDREN WHO HAVE BEEN REMOVED FROM BIRTH PARENTS PENDING RETURN TO THEIR PARENTS OR OTHER PERMANENT PLACEMENT**

Local social services districts are required to establish child protective services to investigate allegations of child abuse or maltreatment. New York Social Services Law ("NY SSL") §§ 411, 423. In the City of New York, the Administration for Children's Services ("ACS") is the child protective services agency. See charter of the City of New York § 617. If a local child protective service, in investigating allegations of child abuse or maltreatment, determines that a child must be removed from his or her birth parent or parents, the child protective service must follow procedures set out in New York Family Court Act (NY FCA") Article 10.

If the Family Court determines that a child must be removed from his or her birth parents' home, "the court shall direct the [ACS] to conduct an immediate investigation to locate relatives of the child, including all of the child's grandparents, and inform them of the pendency of the proceeding and of the opportunity for becoming foster parents or for seeking custody or care of the child, ...." NY FCA § 1017(a) (emphasis added).

A relative's choice to seek legal custody of the removed child or to be a foster parent of the removed child has both legal and financial significance. If the relative seeks and is granted custody of the child, the relative is responsible for supporting the child (including applying for benefits a poor child might be entitled to receive) and is responsible for making decisions about the upbringing of the child. Under such an arrangement, the relative is not supervised by an

3

authorized agency. If employees of the local child protective service believe there is cause to remove the child from the child's relative who has custody, the procedures prescribed in Article 10 of the Family Court Act apply.

If the relative does not seek custody of the removed child, but, instead, becomes a foster parent, the Court grants custody of the child to an authorized agency, not to the relative. NY SSL § 383(2).[3] The foster parent is paid a stipend to provide services to the child. 18 New York Codes, Rules and Regulations ("N.Y.C.R.R.") § 427.6.

Authorized agencies accept applications from individuals who would like to serve as foster parents, conduct investigations of the backgrounds of such persons, determine which applicants are qualified to be foster parents, inspect potential foster homes to determine whether they comply with regulatory requirements designed to provide a safe residence for the foster child, and supervise the conduct of foster parents who have received a child from the authorized agency. 18 N.Y.C.R.R. Part 443.

All foster parents, including those who are relatives of the foster child, must execute agreements with the authorized agency that provide that the foster parent will, inter alia: "permit an authorized representative of the agency to enter the home to investigate in good faith a formal complaint regarding care of the foster child" and "include ... a statement of the foster parent's

---

[3] New York law provides that when a child is removed by a government actor from his or her parents, custody is placed in an authorized agency, which term includes Commissioners of local Departments of Social Services and other agencies approved by the OCFS to take custody of children. NY SSL § 371(10). Authorized agencies board out children to be cared for in individual homes by foster parents. NY SSL §§ 374(1), 371(19).

rights regarding removal of a child from a foster family home as provided under section 443.5 of this Title." 18 N.Y.C.R.R. § 443.3(b)(12), (c).

While the child is in foster care, Article 10 of the Family Court Act provides for continuing Family Court jurisdiction over the birth parents' right to the child until the Court makes a dispositional order: (I) suspending judgment; or (ii) releasing the child to the custody of his parents or other person legally responsible; or (iii) placing the child in a setting other than the home of his or her birth parent(s); or (iv) making an order of protection; or (v) placing the respondent under supervision.  NY FCA § 1052(a).

**B.     STATE LAW AND REGULATIONS REGARDING THE REMOVAL OF FOSTER CHILDREN FROM THE CARE OF FOSTER PARENTS**

In <u>Smith v. Organization of Foster Families For Equality and Reform</u>, 431 U.S. 816 (1977) ("<u>OFFER</u>"), the Supreme Court reviewed a Constitutional challenge brought by foster parents to New York State's procedures for removal of foster children from their care.  The Supreme Court recognized that "[f]oster parents, who are licensed by the State or an authorized foster-care agency, provide care under a contractual arrangement with the agency, and are compensated for their services." 431 U.S. at 826.  "The typical contract expressly reserves the right of the agency to remove the child on request [and], [c]onversely, the foster parent may cancel the agreement at will."  431 U.S. at 826.

In <u>OFFER</u>, the Court found that The process for removing foster children from the homes of foster parents, along with possible pre-removal intervention by foster parents at Family Court

through pre-removal permanency hearings, met the due process rights of foster parents. Although the regulatory citations have changed, the procedures reviewed in OFFER are unchanged.

    1.    **LOCAL AGENCY PROCEDURES**

New York law provides that "[w]hen any child shall have been placed ... in a family home by a social services official, the social services official may remove such child from such ... family home and make such disposition of such child as is provided by law." NY SSL § 400(1).

State regulations provide that when an authorized agency proposes to remove a child in foster care from a foster home, such authorized agency must notify the foster parents, in writing at least 10 days prior to the proposed effective date of the removal, of the intention to remove such child <u>except where the health or safety of the child requires that the child be removed immediately from the foster home</u>. 18 N.Y.C.R.R. § 443.5(a)(1). Such notification must further advise foster parents that they may request a conference at which time foster parents, with or without a representative, may appear to have the proposed action reviewed, be advised of the reasons therefor and be afforded an opportunity to submit reasons why the child should not be removed. 18 N.Y.C.R.R. § 443.5(a)(2).

Upon the receipt of a request for such conference, the social services official shall set a time and place for such conference and shall send written notice of such conference to the foster parents and their representative, if any, and to the authorized agency, if any. 18 N.Y.C.R.R. § 443.5(b).

The social services official shall render and issue a written decision and must send it to the foster parents and their representative, if any, and to the authorized agency, if any. Such decision

shall advise the foster parents of their right to request a fair hearing from the OCFS in accordance with section 400 of the Social Services Law.  18 N.Y.C.R.R. § 443.5(c).

### 2. STATE FAIR HEARING

Any person aggrieved by an adverse decision of a local social services official concerning removal of a foster child from a foster home may request an administrative hearing by the OCFS. NY SSL § 400(2). If there is a request for a fair hearing, the hearing is held before an Administrative Law Judge ("ALJ") employed by the OCFS. NY SSL §§ 400, 22(3)(d); 18 N.Y.C.R.R. Part 358.

If the decision after fair hearing is adverse to the foster parent, the foster parent may seek judicial review in New York Supreme Court pursuant to article 78 of New York Civil Practice Law and Rules. NY SSL § 22(9)(a).

### C. ALLEGATIONS IN The Amended Complaint

The Amended Complaint alleges that on February 6, 2008, Iglesias, the grandmother of infant plaintiffs K.R., then six years old, and J.R., then five years old, was the foster parent of the children. Amended Complaint ¶ 11, 12. On that date, police officers came to the apartment and arrested Iglesias. Id. ¶ 45. The police officers took Iglesias to the precinct, Id. ¶ 46, and also took K.R. and J.R. to the precinct, Id. ¶ 47. After holding Iglesias for several hours, the police released her without filing any charges against her. Id. ¶ 48.

The police called the New York State Central Register of Child Abuse and Maltreatment, alleging that Iglesias had neglected the children, and turned the children over to the ACS, which took the children into protective custody. Id. ¶ 50. After conducting an investigation of the allegations made by the police against Iglesias, defendants Colon, Morency, and Lissimore decided to detain the infant plaintiffs in the City's custody. Id. ¶ 54.

On February 13, 2008, a judge of the Family Court, Kings County, ordered that infant plaintiff K.R. be returned to Iglesias. Id. ¶ 63. K.R. and J.R. were returned to Iglesias on February 15, 2008. Id. ¶ 65.

Plaintiffs subsequently commenced this action against, inter alia, State defendant. The Amended Complaint does not allege that Iglesias sought an independent review conference with ACS, pursuant to 18 N.Y.C.R.R. § 443.5, or sought any administrative hearing review by the OCFS.

## ARGUMENT

### POINT I

**THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BARS THIS COURT FROM ENTERTAINING CLAIMS AGAINST STATE DEFENDANT FOR MONETARY RELIEF, ALLEGED STATE LAW VIOLATIONS, AND FOR A DECLARATORY JUDGMENT REGARDING PAST CONDUCT**

The Supreme Court has long held that the Eleventh Amendment to the Constitution of the United States embodies the principle that an unconsenting state is immune from suit in federal court by her own citizens. See Hans v. Louisiana, 134 U.S. 1, 14-15, 18-19, (1890). It is a firm and settled rule that the Eleventh Amendment bars federal courts from entertaining a suit against a State agency as well as the state itself. See, Pennhurst State School and Hospital et al. v. Halderman et al, 465 U.S. 89, 100 (1984) (in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment). The Eleventh Amendment "bar exists whether the relief sought is legal or equitable." Dube v. State University of New York, 900 F.2d 587, 594 (2d Cir. 1990) cert. denied,

501 U.S. 1211 (1991), quoting Papasan v. Allain, 478 U.S. 265, 276 (1986).  Thus actions for monetary relief, declaratory and injunctive relief against the State or a state agency, brought pursuant to 42 U.S.C. § 1983, cannot be maintained in the district court.

Similarly, the Eleventh Amendment bars federal courts from entertaining suits like the case at bar for monetary relief against a defendant sued as the head of a State agency.  See Edelman v. Jordan, 415 U.S. 651, 668 (1974); Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989) (State officials sued in their official capacity are immune from suit for monetary damages under the Eleventh Amendment in cases where the state is the real party in interest).

The Amended Complaint seeks a judgment against all defendants "[a]warding plaintiff and infant plaintiffs reasonable compensatory and punitive damages in a sum to be determined by the court; and ... interest from February 6, 2008."  Amended Complaint, WHEREFORE clause ¶¶ 11, 12.  To the extent this request for damages is made against State defendant, this is precisely the type of claim that under the Eleventh Amendment a Federal Court may not hear, and, thus, the claims for monetary relief must be dismissed against State defendant.

The Amended Complaint also seeks a judgment "[d]eclaring unconstitutional defendants' removal and detention of infant plaintiffs from plaintiff's care." WHEREFORE clause ¶ 1. To the extent plaintiffs' reference to "defendants'" includes a reference to State defendant, the claim must be dismissed because the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past." Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (quoting Green v. Mansour, 474 U.S. 64, 73 (1985)).

10

In addition, "states -- and state officers, if sued in their official capacities for retrospective relief - - are immunized by the Eleventh Amendment and are not 'persons' subject to suit under § 1983." K & A Radiologic Tech. Services, Inc. v. Commissioner of Dep't of Health, 189 F.3d 273, 278 (2d Cir. 1999).

Iglesias alleges she was injured by acts that occurred between February 6, and February 15, 2008. However, "[i]njunctive relief or declaratory relief is useless to a person who has already been injured." Diblasio v. Novello, 2002 WL 31190139 *9 n2, 2002 U.S. Dist. LEXIS 18424, 18428 n2, (S.D.N.Y. 2002), rev'd other grounds, 344 F.3d 292 (2nd Cir. 2003), citing Butz v. Economou, 438 U.S. 478, 504 (1978).

The eighth cause of action asserts a state tort claim against State defendant by alleging that "[a]ll of the defendants had a duty to act with reasonable care toward plaintiff and with the highest degree of care toward infant plaintiffs," and "[i]n removing and detaining infant plaintiffs and in failing to order the immediate return of infant plaintiff, all defendants breached said duties and grossly deviated from accepted professional standards." Amended Complaint ¶¶ 114-115. That claim must be dismissed because this Court may not adjudicate whether a State official allegedly violated State law. Pennhurst State School, supra 465 U.S. 89, 103-06. To do so would impermissibly extend this Court's jurisdiction beyond granting injunctive relief for the enforcement of Federal law recognized by the Supreme Court in Ex parte Young, 209 U.S. 123 (1908).

For the foregoing reasons, the claims against State defendant for monetary relief, for alleged State law violations, and for a declaratory judgment that State defendant is liable for the past conduct must be dismissed.

11

## POINT II

**Iglesias'S CLAIMS AGAINST STATE DEFENDANT MUST BE DISMISSED FOR LACK OF AN ARTICLE III CASE OR CONTROVERSY**

Article III of the United States Constitution limits the jurisdiction of the federal courts to actual cases and controversies. O'Shea v. Littlejohn, 414 U.S. 488, 493 (1974). As the Supreme Court has stated:

> [t]he actual-injury requirement [of Article III] would hardly serve the purpose ... of preventing courts from undertaking tasks assigned to the political branches ... if once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy all inadequacies in that administration. The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established.

Lewis v. Casey, 518 U.S. 343, 357 (1996)(emphasis in original). For a plaintiff to establish an Article III "case or controversy" against a defendant– in particular standing– the plaintiff must establish "injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984) Reh. Den., 468 U.S. 1250 (1984). The "fairly traceable" component "examines the causal connection between the assertedly unlawful conduct and the alleged injury, whereas the ["redressability" component] examines the causal connection between the alleged injury and the judicial relief requested." Id., 468 U.S. at 753 n. 19. "Cases ... in which the relief requested goes well beyond the violation of law alleged, illustrate why it is important to keep the inquiries separate if the "redressability" component is to focus on the requested relief." Id.

In Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26 (1976), the Supreme Court held nonjusticiable a suit brought by indigent individuals against the Internal Revenue Service's Ruling allowing favorable tax treatment to nonprofit hospitals that offered

indigent patients only emergency-room services, rather than full hospital services. The Court held that plaintiffs failed to establish that the asserted injury was the consequence of the defendants' actions and there was no substantial likelihood that victory in the suit would result in plaintiffs receiving the hospital treatment they desired. 426 U.S. at 42-44. The Court stated that "[i]t is equally speculative whether the desired exercise of the court's remedial powers in this suit would result in the availability to respondents of such [emergency room] services." 426 U.S at 43.

The jurisdictional significance of the lack of causation was discussed in Rizzo v. Goode, 423 U.S. 362, 371 (1976), where the Supreme Court found that the plaintiffs there lacked the causative link to satisfy the "case and controversy requirement" of Article III:

> As the facts developed, there was no affirmative link between the occurrences of the various incidents of police misconduct and the adoption of any plan or policy by petitioners -- express or otherwise -- showing their authorization or approval of such misconduct. Instead, the sole causal connection found by the District Court between petitioners and the individual respondents was that in the absence of a change in police disciplinary procedures, the incidents were likely to continue to occur, not with respect to them but as to the members of the classes they represented.

423 U.S. at 371.

In the instant case, the Amended Complaint alleges no facts demonstrating any involvement by State defendant in the February 6, 2008, removal of the children from Iglesias by the New York City Police Department, let alone any affirmance by OCFS of that removal, e.g., through an OCFS fair hearing. In the words of Allen v. Wright, supra, plaintiffs have not demonstrated that they have suffered any legal injury that is "fairly traceable to the [State] defendant's allegedly unlawful conduct." Indeed, the February 6, 2008, removal never received either an ACS Independent Review conference or administrative hearing review by the OCFS. Thus, plaintiff lacks standing to challenge the administrative procedures available to her for contesting the removal of her foster

13

children (18 NYCRR §§ 443.5, and 358-5.6 & 358-5.9), because she did not pursue those procedures and thus has no basis for speculating that the challenged administrative procedures would have violated her rights -- let alone, harmed her.

For the foregoing reasons, State defendant respectfully requests that all causes of action be dismissed against her due to plaintiffs' failure to demonstrate the existence of an Article III case or controversy.

## POINT III

**The Amended Complaint DOES NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST STATE DEFENDANT**

The Supreme Court has recently explained the standard for deciding motions to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) in pertinent part as follows:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1964-5 (2007) (citations, footnote and parenthetical quotations omitted). In the instant case, where the relevant facts pleaded in the complaint are not in dispute and do not state a claim for relief against State defendant, the Court may properly dismiss the Complaint in its entirety against State defendant for failure to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 8(a)(2); Bell Atlantic Corp. v. Twombly.[4]

---

[4] The second and seventh causes of action, which explicitly do not allege that State defendant is liable, are not addressed here.

14

Reviewing the allegations in the Amended Complaint, and for the reasons set out in Point II <u>Supra</u>, this Court may properly find that while State defendant's challenged regulations apply to foster care agency removals of foster children from foster homes, the regulations are not applicable to law enforcement officials' removals of foster children for their protection when arresting the foster parent. If the Court makes such a finding, the Amended Complaint states no cause of action against State defendant and may be dismissed without further analysis. But to the extent this Court declines to make such finding and, instead, finds that New York Social Services Law § 400 and State defendant's implementing regulations are applicable to the removal of foster children by law enforcement officials when arresting the foster parent, for the reasons set out below, the Amended Complaint does not state a cause of action against State defendant. In the Amended Complaint, the first cause of action alleges that: "... defendant Carrion has promulgated and/or retained regulations regarding the removal of children from foster homes, specifically regulations governing the, so-called "Independent Review" of a removal decision, which do not require that local governments provide relatives who serve as foster parents with due process of law prior to or subsequent to the removal of children from said relatives." Amended Complaint ¶ 71. The first cause of action further alleges that:

> [s]aid regulations, and the removal and detention effectuated pursuant to said policy and regulations, constituted an unlawful interference with plaintiffs' liberty interest in the care and custody of her grandchildren, the infant plaintiffs herein, in violation of the Fourteenth Amendment to the United States Constitution, and the Second Circuit's decision in <u>Rivera v. Marcus</u>, .... Said regulations, and their implementation, constitute gross deviations from acceptable professional conduct and deliberate indifference on the part of defendants Carrion, ... to the strong likelihood that these regulations would cause the removal of children from their relatives without due process of law, in violation of the Fourteenth Amendment.

<u>Id</u>. ¶ 72.

15

Iglesias would have this Court disregard the Supreme Court's finding in OFFER that new York's regulations provide sufficient due process guarantees to foster parents, and would have this Court rely instead on the Second Circuit's opinion in Rivera v. Marcus, 696 F.2d 1016 (2nd Cir. 1982) (Rivera"), which found that plaintiff Rivera had a protected liberty interest and was entitled to more due process than she had received before removal of foster children from foster care. Rivera, an older half sister to the two foster children, cared for them as a "surrogate mother" before their birth mother was committed to a mental hospital, and the birth mother had asked Rivera to continue to care for the children. Although State Juvenile Court transferred custody of the children from the birth mother to the State of Connecticut, Rivera was not notified of these proceedings and cared for the two children as a custodial family member for six and four years respectively. Rivera was later offered, and accepted, the opportunity to become a foster parent. Id. At 1017-18.

The Rivera Court, citing OFFER, noted that three factors define Rivera's liberty interest: Rivera was related biologically to the children; they lived together as a family for several years before the foster care agreement was consummated; and there was not the potential for conflict with the rights of the natural parents of the children. 696 F.2d at 1024. If Iglesias's contention that Rivera is controlling in the instant case is correct, her claim must be dismissed because she has not demonstrated that she has the same liberty interest as Rivera. Although Plaintiff is biologically related to her grandchildren, plaintiff does not allege that they resided together in a Constitutionally protected "family" relationship prior to her accepting the role of foster parent.

In Balbuena v. Mattingly, 05 Cv. 2986 (TPG), 2007 WL 2845031, 2007 U.S. Dist. Lexis 72517 (S.D.N.Y., Sep 28, 2007) ("Balbuena"), Judge Griesa recently reviewed and denied claims

16

similar to those raised by Iglesias in the Amended Complaint.[5]  In Balbuena, the Court found that:

> [i]n OFFER, the Supreme Court held that NY's regulations regarding the Independent Review, followed by the hearing, were constitutional. 431 U.S. 816 (1977).  Further, the Second Circuit has held that a combination of informal and formal proceedings, along with the ability of state court review, satisfies due process.  Signet Constr. Corp. v. Borg, 775 F.2d 486, 492 (2d Cir.1985).  Thus, any procedural shortcomings with the Independent Review are rectified by the hearing that can be immediately requested, and thus do not rise to the level of constitutional due process violations.

2007 WL 2845031 at *9.

The third cause of action (Amended Complaint ¶ 89-92), the fourth cause of action (¶¶ 95-99) and the fifth cause of action (¶ 102-103) all contain allegations about the system of administrative hearings conducted by the OCFS and aver that those hearings violate Iglesias's right to procedural and/or substantive due process rights.  Since no administrative hearing was either requested from or held by the OCFS, these causes of action should all be dismissed as there are no "factual allegations ... enough to raise a right to relief above the speculative level."  Bell, Supra.

The sixth cause of action alleges that "[i]n failing to order City defendants to return infant plaintiffs to plaintiff's care, defendant Carrion violated infant plaintiffs' right be [sic] free of unlawful searches and seizures, protected by the Fourth Amendment of the United States Constitution."  Amended Complaint ¶ 108.  The Amended Complaint does not allege, let alone demonstrate, that State defendant ever knew of the removal of the foster children from Iglesias on February 6, 2008.  Without a showing of such knowledge, and of a request by Iglesias for the OCFS to review the matter, there is no factual basis for the claim.

---

[5] Plaintiff's counsel was also Ms. Balbuena's counsel.

For all of the foregoing reasons, the Amended Complaint should be dismissed in its entirety as provided in F. R. Civ. P. Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, State defendant respectfully requests that the Court grant the instant motion to dismiss the Amended Complaint against her.

Dated: New York, New York
April 7, 2008

Respectfully submitted,

ANDREW M. CUOMO
Attorney General of the State of New York
<u>Attorney for State defendant</u>

By:    S/
ROBERT L. KRAFT (RK5418)
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8632
