UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ZOILA IGLESIAS, individually and as next friend
of J.R. and K.R. infants,

                    Plaintiffs,                             08 Civ. 1595 (AKH)

      -against-

JOHN MATTINGLY, individually and as Commissioner,
HELEN COLON, individually and as caseworker,
CARYNE MORENCY, individually and as supervisor;
TRACEY LISSIMORE, individually and as manager;
TAMIKA McCOY, individually and as caseworker,
FLORENCE UBA, individually and as supervisor,
LEAKE & WATTS SERVICES, Inc.,
LIANNE CLARK PARRIS, individually and caseworker,
ZOLA VIOLA, individually and as supervisor, COALITION
FOR HISPANIC FAMILY SERVICES, Inc.. CITY OF NEW
YORK, and GLADYS CARRION, as Commissioner,

                    Defendants.
-------------------------------------------------------------------------X


### PLAINTIFFS' MEMORANDUM OF LAW
### IN OPPOSITION TO THE MOTION TO DISMISS
### OF DEFENDANT CARRIÓN

Carolyn A. Kubitschek (CK6415)
Lansner & Kubitschek
Attorneys for Plaintiffs
325 Broadway, Suite 201
New York, New York 10007
(212) 349-0900
Ckubitschek@lanskub.com

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATUTORY AND REGULATORY SCHEME . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.    The State Office of Children and Family Services Controls the Child Welfare
          System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     B.    Preference for Placing Children in Kinship Foster Homes . . . . . . . . . . . . . . 7

     C.    Removal of Children from Kinship Foster Homes . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

     I.    THE ELEVENTH AMENDMENT DOES NOT BAR PLAINTIFF'S CLAIMS 12

          A.    The Eleventh Amendment does not bar injunctive relief against
               defendant Carrion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          B.    The Eleventh Amendment does not bar declaratory relief against
               defendant Carrion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     II.    PLAINTIFFS HAVE STATED A CASE OR CONTROVERSY AGAINST
          DEFENDANT CARRION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     III.    THE COMPLAINT SATISFIES PLEADING REQUIREMENTS . . . . . . . . . . 18

     IV.    PLAINTIFF ZOILA IGLESIAS AND HER GRANDCHILDREN HAVE
          CONSTITUTIONALLY PROTECTED LIBERTY INTERESTS IN THEIR
          MUTUAL FAMILY RELATIONSHIP . . . . . . . . . . . . . . . . . . . . . . . . 20

          A.    Plaintiff's biological and custodial relationship with her
               grandchildren, and theirs with her, are constitutionally-protected
               liberty interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

B.    The Foster Care Agreement Does Not Sever Plaintiffs' Liberty
Interest in Each Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

V.    STATE DEFENDANTS' REGULATIONS DEPRIVE PLAINTIFF AND
INFANT PLAINTIFFS OF DUE PROCESS . . . . . . . . . . . . . . . . . . . . . . . . 26

A.    Plaintiffs Are Entitled to Due Process of Law . . . . . . . . . . . . . . 26

B.    The Conference held by Defendant City under Defendant Carrion's
Regulations is Inadequate and Defendant Carrion's Regulations are
Facially Insufficient . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

1.    Due Process requires an actual hearing, not a
conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

2.    Delay in the Provision of the Conference Violates
Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

C.    The Administrative Hearing held by Defendant Carrion's is
Inadequate and Defendant Carrion's Regulations are Facially
Insufficient . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

1.    Delay in the Hearings . . . . . . . . . . . . . . . . . . . . . . 29

2.    The administrative hearing provides no meaningful
remedy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## TABLE OF AUTHORITIES

**Cases:**

31 Foster Children v. Bush, 329 F.3d 1255, 1265 (11th Cir. 2003), *cert. den. sub nom.* Reggie B. v. Bush, 540 U.S. 984, 124 S.Ct. 483 (2003) ................................................................................16

Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001)..........................................................................16

Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187 (1965) .......................................................28, 31

Balbuena v. Mattingly, 05 Cv. 2986 (TPG), 2007 WL 2845031, 2007 Lexis 72517 (S.D.N.Y. 2007) ..........................................................................................................................................5, 22

Baur v. Veneman, 352 F.3d 625 (2d Cir. 2003) .............................................................................16

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007).................................................................18

Berman v. Young, 291 F.3d 976 (7th Cir. 2002)............................................................................29

Beaudoin v. Toia, 45 N.Y.2d. 343, 408 N.Y.S.2d. 417 (1978) ....................................................6, 7

Bray v. City of New York, 346 F. Supp. 2d 480 (S.D.N.Y. 2004).................................................16

Brown v. Daniels, 128 Fed.Appx. 910(3d Cir. 2005).....................................................................28

Calcutti v. SBU, Inc., 224 F.Supp.2d 691 (S.D.N.Y. 2002)..........................................................30

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487 (1985) ...............................28

CSX Transp. v. N.Y. State Office of Real Prop. Servs., 306 F.3d 87 (2d Cir. 2002)....................12

Dube v. State University of New York, 900 F.2d 587 (2d Cir. 1990) ............................................12

Duchesne v. Sugarman, 566 F.2d 817 (2d Cir. 1976).....................................................................26

Dupuy v. Samuels, 397 F.3d 493 (7th Cir. 2005) ..........................................................................29

Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347 (1974) .............................................................13

Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007)...........................................................................18

Ex parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908) .................................................................13, 14

FDIC v. Mallen, 486 U.S. 230, 108 S.Ct. 1780, 1788 (1988) .........................................................28

Finch v. New York State Office of Children and Family Serv's, No. 04 Civ. 1668, 2007 WL

1982752, (S.D.N.Y. July 3, 2007) ...............................................................................................18

Flowers v. Webb, 575 F.Supp. 1450, 1453 (E.D.N.Y. 1983)....................................................13, 15

Ford v. Air Line Pilots Ass'n, Int'l, 268 F.Supp.2d 271 (E.D.N.Y. 2003) ...................................30

Ford v. Reynolds, 316 F.3d 351 (2d Cir. 2003)...........................................................................12

Gold v. Feinberg, 101 F.3d 796 (2d Cir. 1996) ...........................................................................23

Green v. Mansour, 474 U.S. 64, 106 S. Ct. 423 (1985)...........................................................13, 14

Harley ex rel. Johnson v. City of New York, 36 F.Supp.2d 136 (E.D.N.Y. 1999) .....................22

Harper v. Virginia Dept. of Taxation, 509 U.S. 86, 113 S.Ct. 2510 (1993)..................................31

Haynes v. Mattingly, 06 Civ. 1383 (TPG) ..........................................................................5, 22, 30

Henrietta D. v. Giuliani, 119 F.Supp.2d 181 (E.D.N.Y. 2000), aff'd Henrietta D. v. Bloomberg,

331 F.3d 261 (2d Cir. 2003), cert. den.  541 U.S. 936, 124 S.Ct. 1658 (2004) ........................6, 14

In re Hasani B., 195 A.D.2d 404, 600 N.Y.S.2d 694 (1st Dep't 1993) .........................................11

Intermedics, Inc. v. Ventitrex Inc., 775 F.Supp. 1258 (N.D. Cal. 1991) .....................................30

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007)...............................................................................18

Johnson v. City of New York, No. 99 Civ. 0048, 2003 WL 1826122 (S.D.N.Y. 2003)...............22

Jones v. Mattingly, 04 Civ. 8331 (TPG) ......................................................................................5

Kapps v. Wing, 283 F. Supp.2d 866 (E.D.N.Y. 2003), aff'd in part, vac. on other grounds, 404

F.3d 105 (2d Cir. 2005).................................................................................................................14

Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803).....................................................................31

Matter of James B., 96 A.D.2d 730, 465 N.Y.S.2d 348 (4th Dep't 1983) .....................................11

Matter of Dina Michelle S., 236 A.D.2d 544, 653 N.Y.S.2d 677 (2d Dep't 1997) ........................11

Matter of the Foster Care Status of George Joey S., 194 A.D.2d 328, 598 N.Y.S.2d 229 (1st Dep't 1993)................................................................................................................11

May v. Anderson, 345 U.S. 528, 73 S.Ct. 840 (1953)...................................................25

McCain v. Koch, 70 N.Y.2d 109, 517 N.Y.S.2d 918 (1987)............................................7

McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 2251 (1990)..............................................................................................................31

Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932 (1977)...................21, 24

New York State Nat. Org. of Women v. Pataki, 261 F.3d 156 (2d Cir. 2001)...............29

Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004)................................................27

Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571 (1925).....................................24

Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438 (1944) ..................................21, 24

Reich v. Collins, 513 U.S. 106, 115 S.Ct. 547 (1994)....................................................31

Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362 (1964) .................................................15

Rivera v. Marcus, 696 F.2d 1016 (2d Cir. 1982)......................................20, 21, 22, 23, 26, 27, 28

Rivera v. Mattingly, 07 Civ. 7077 (TPG) ..........................................................5, 22, 30

Rodriguez v. McLoughlin, 214 F.3d 328 (2d Cir. 2000), cert. den. 532 U.S. 1051 (2001)..........24

Smith v. Organization of Foster Families, 431 U.S. 816, 97 S.Ct. 2094 (1977) ...............20, 21, 23

Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208 (1972) ..........................................24, 26

Steffel v. Thompson, 415 U.S. 452, 94 S. Ct. 1209 (1974) ............................................13

Swipies v. Kofka, 419 F.3d 709 (8th Cir. 2005)..............................................................28

Tenenbaum v. Williams, 193 F.3d 581 (2d Cir. 1999), cert. den. 529 U.S. 1098 (2000) .............26

Tennessee v. Lane, 541 U.S. 509,124 S.Ct. 1978 (2004) ...............................................12

Tower v. Leslie-Brown, 326 F.3d 290 (1st Cir. 2003) ....................................................28

Verizon Md., Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 122 S. Ct. 1753 (2002) .........14

Whisman v. Rinehart, 119 F.3d 1303 (8th Cir. 1997) ....................................................28

Williston v. Eggleston, 379 F. Supp.2d 561 (S.D.N.Y. 2005)......................................14

Zinermon v. Burch, 494 U.S. 113, 110 S.Ct. 975 (1990) .............................................29

**Statutes and Regulations:**

18 N.Y.C.R.R. Part 358 ...............................................................................................11

18 N.Y.C.R.R. Part 358 § 358-5.6 ..............................................................................11

18 N.Y.C.R.R. Part 358 § 358-5.9 ..............................................................................11

18 N.Y.C.R.R. § 443.5 ...................................................................................9, 10, 19, 27

18 N.Y.C.R.R. § 443.7. ...................................................................................................8

28 U.S.C. 2201 ...............................................................................................................13

42 U.S.C. § 1983...........................................................................................................12

42 U.S.C. § 671.............................................................................................................7

N.Y. Fam.Ct. Act § 1017 .............................................................................................7

N.Y. Fam. Ct. Act § 1089 ............................................................................................11

N.Y. Fam. Ct. Act § 1027 .............................................................................................3

N.Y. Soc. Serv. L. § 375 ..............................................................................................8

N.Y. Soc. Serv. L. §2...................................................................................................9

N.Y. Soc. Serv. L. §17..........................................................................................6, 9, 10

N.Y. Soc. Serv. L. § 20....................................................................6, 7, 9, 15, 16

N.Y. Soc. Serv. L. §22..........................................................................................8, 9, 10

N.Y. Soc. Serv. L. §65.................................................................................................6

N.Y. Soc. Serv. L. §34 ....................................................................................6, 7, 10, 16

N.Y. Soc. Serv. L. §378 .......................................................................................9, 13, 16

N.Y. Soc. Serv. L. §383 ..................................................................................................8

N.Y. Soc. Serv. L. §400 .............................................................................................8, 10

N.Y.Const. art. XVII, §1 ................................................................................................6

## STATEMENT OF FACTS

Plaintiff Zoila Iglesias has cared for four of her grandchildren for most of their lives. She is the legal custodian of two of them and the kinship foster mother of the other two. She has legal custody of R.R., born October 28, 1994, and A.Q., born August 28, 2004. R.R. has been in Ms. Iglesias' custody since 1998. A.Q., R.R.'s first cousin, has been in plaintiff's custody since his birth.

In January, 2005, A.Q.'s sister, infant plaintiff K.R., born December 26, 2001, came to live with Ms. Iglesias. Defendant Mattingly, Commissioner of defendant City's Administration for Children's Services ("ACS"), removed K.R. from her parents, because the parents were unable to care for K.R., and placed K.R. in the home of Ms. Iglesias. Subsequently, the foster care agency Coalition for Hispanic Family Services ("Coalition"), certified plaintiff as a kinship foster parent for K.R. Plaintiff was never told that she had the choice to simply become K.R.'s custodian; the decision to make her a foster parent was made by others. (Iglesias Decl. ¶¶19, 20).

A few months later, in April, 2005, infant plaintiff J.R.'s father asked Ms. Iglesias to take care of J.R., born December 7, 2002, who is the brother of A.Q. and infant plaintiff K.R.; and Ms. Iglesias agreed. She informed Coalition staff of the new addition to her family. Thereafter, the Coalition apparently informed the City that Ms. Iglesias was caring for J.R., and defendant Mattingly filed child neglect charges against J.R.'s mother and father, obtaining an order granting legal custody of J.R. to the City. The City placed J.R. with the Coalition as well. The Coalition, in turn, licensed Ms. Iglesias as the foster mother for J.R. Plaintiff was never told that she had the choice to simply become K.R.'s custodian; the decision to make her a foster parent was made by others. (Iglesias Decl. ¶¶27, 28).

1

Ms. Iglesias and her four grandchildren lived together happily for three years. During that time, Ms. Iglesias provided all four children with a safe and loving home. She always made sure that the children were clean, well-fed, and well-dressed, and that the children received proper medical treatment and a lot of love.

The two infant plaintiffs and the two other grandchildren in turn developed strong ties of love and affection with plaintiff. In fact, the entire family is very close, and the children developed strong ties of love and affection for their relatives as well. While infant plaintiffs were in plaintiff's care, Ms. Iglesias always cooperated with the Coalition and with ACS.

When the Coalition and ACS decided to terminate the parental rights of K.R.'s parents, plaintiff began the process of adopting her granddaughter K.R.

On February 6, 2008, while plaintiff's 20-year-old son (the uncle of the four children) was visiting plaintiff, police officers came to plaintiff's apartment and arrested both plaintiff's youngest son and plaintiff. The police officers took plaintiff and the four children to the precinct house of the Seventh Precinct, in lower Manhattan.

After holding plaintiff for several hours, the police released plaintiff without filing any charges against her. Upon information and belief, the police did file charges against plaintiff's son, but those charges were eventually dismissed.

However, while Ms. Iglesias had been detained, police officers had called the New York State Central Register of Child Abuse and Maltreatment, alleging that plaintiff had neglected the children. The neglect allegations against plaintiff were false. At all times, plaintiff has provided exceptional, loving care to her grandchildren, and has never neglected them. ACS responded to the

2

report and took all four children from the precinct into ACS custody. When plaintiff was released by the police, she unsuccessfully attempted to retrieve her grandchildren.

Upon information belief, defendant Mattingly assigned defendant Colon to investigate the charges against plaintiff, and defendants Morency and Lissimore to supervise the investigation. Defendants Colon, Morency, and Lissimore conducted a constitutionally inadequate investigation of the charges that plaintiff had neglected the children.

Based upon said inadequate investigation, defendants Colon, Morency, and Lissimore decided to detain the infant plaintiffs, plus plaintiff's other two grandchildren R.R. and A.Q., in the City's custody. Defendants placed the four children in government custody, in two different homes, with adults who were strangers to the children.

When they removed the infant plaintiffs (the two kinship foster children) from plaintiff, defendants Colon, Morency, and Lissimore did not provide plaintiff with any notice of removal stating the reasons for the removal, nor did they inform plaintiff of her right to contest the removal.

The next day, February 7, 2008, defendant Colon, with the knowledge and consent of defendants Morency and Lissimore, commenced child protective proceedings against plaintiff in the Family Court, New York County, charging that plaintiff had neglected R.R. and A.Q. Defendants filed no proceedings whatsoever with regard to infant plaintiffs J.R. and K.R. Defendants sought a court order to continue detaining R.R. and A.Q. from plaintiff. Defendants sought no court orders whatsoever with regard to the infant plaintiffs.

That same day, February 7, 2008, the Family Court held an emergency hearing, pursuant to N.Y. Fam. Ct. Act §1027, on City defendants' request for on order continuing the detention of R.R. and A.Q. At the conclusion of the hearing, at which plaintiff, City defendants, and the children's

3

counsel appeared, presented evidence, and cross-examined witnesses, the Family Court ordered defendants to return R.R. and A.Q. to plaintiff immediately. Defendants returned R.R. and A.Q. to plaintiff the next day, February 8, 2008.

None of the defendants ever provided plaintiff or the infant plaintiffs with any notice or any opportunity to be heard with regard to the removal and detention of the infant plaintiffs (the kinship foster children) from plaintiff. Instead, defendants continued to detain infant plaintiffs from plaintiff, and kept infant plaintiffs separated, in two different foster homes, under the supervision of two different foster care agencies, defendant Coalition and defendant Leake and Watts Services.

On February 13, 2008, the lawyer who had been representing infant plaintiff K.R. in the child neglect proceedings against K.R.'s parents in the Family Court, Kings County, filed an application for the return of infant plaintiff K.R. to plaintiff. That same day, the Family Court, Kings County, issued an order directing defendants to return infant plaintiff K.R. to plaintiff. No judge made any orders with regard to infant plaintiff J.R.

Defendants refused to comply with the order, and instead continued to detain infant plaintiffs K.R. and J.R. in government custody. Defendants continued to detain J.R. and K.R., without providing due process of law to plaintiff or infant plaintiffs J.R and K.R., until February 15, 2008. On February 15, 2008, late in the afternoon, defendants finally returned J.R. and K.R. to Ms. Iglesias. The children were reunited with their grandmother, with each other, and with their younger brother and their cousin, R.R.

During the nine days that defendants detained the infant plaintiffs, defendants refused to permit plaintiff and infant plaintiffs to see each other, or even to speak to each other by telephone.

4

## PROCEDURAL HISTORY

Plaintiff and infant plaintiffs filed the above-entitled action on February 15, 2008. The case was originally assigned to Hon. Thomas P. Griesa as related to four other cases involving kinship foster families which were then pending before Judge Griesa, including Jones v. Mattingly, 04 Civ. 8331 (TPG), Balbuena v. Mattingly, 05 Civ. 2986 (TPG), Haynes v. Mattingly, 06 Civ. 1383 (TPG); and Rivera v. Mattingly, 06 Civ. 7077 (TPG).

On February 15, 2008, the date upon which the action was commenced, plaintiff and infant plaintiffs submitted an application for a temporary restraining order, seeking the immediate return of infant plaintiffs to plaintiff. As counsel for plaintiff was arguing before Judge Griesa, the Court received a telephone call, stating that infant plaintiffs J.R. and K.R. had just then returned to plaintiff. Plaintiff and infant plaintiffs then withdrew their request for a temporary restraining order.

Judge Griesa subsequently declined to accept the case as a related case, and the matter was reassigned to this Court. The initial Rule 16 conference is presently scheduled for July 11, 2008.

All defendants have answered except for defendant Gladys Carrión, Commissioner of the New York State Office of Children and Family Services. Defendant Carrión, who is sued in her official capacity only, has moved to dismiss the complaint against her.

This memorandum of law is written in opposition to that motion.

## STATUTORY AND REGULATORY SCHEME

### A. The State Office of Children and Family Services Controls the Child Welfare System

In New York, "the social services program is a State program, administered through the 58 local social services districts under the general supervision of the State Department of Social Services and the State Commissioner of Social Services." Beaudoin v. Toia, 45 N.Y.2d 343, 347, 408 N.Y.S.2d 417, 419 (1978), citing N.Y.Const. art. XVII, §1; N.Y. Soc. Serv. L. §§17, 20, 34. The State Office of Children and Family Services ("OCFS"), under the leadership of defendant Carrión, its Commissioner, administers the social services program, including the foster care program. "The county commissioners are denominated by statute 'agents' of the State department." Beaudoin v. Toia, 45 N.Y.2d 343, 347, 408 N.Y.S.2d 417, 419 (1978), citing N.Y. Soc. Serv. L. §65(3). Each County Commissioner, including defendant John Mattingly, "is a part of and the local arm of the single State administrative agency. . . . [L]ocal commissioners [are] agents of the State and not of their respective counties." Beaudoin v. Toia, 45 N.Y.2d 343, 347, 408 N.Y.S.2d 417, 419 (1978).

Since defendant Mattingly is an agent of defendant Carrión, defendant Mattingly "may not substitute [his] interpretations of the regulations of the State department for those of the State department or the State commissioner." Beaudoin v. Toia, 45 N.Y.2d 343, 347, 408 N.Y.S.2d 417, 419 (1978).

Under New York State law, a State Commissioner "has a duty to supervise City defendants in the provision of public benefits and services. Indeed, in the administration of public assistance funds, 'the local commissioners act on behalf of and as agents for the State.' Hence, if City defendants have violated plaintiffs' rights, . . . then State Defendant, as City defendants' principal, and as their supervisor, is also liable." Henrietta D. v. Giuliani, 119 F.Supp.2d 181, 216 (E.D.N.Y.

6

2000), *aff'd* Henrietta D. v. Bloomberg, 331 F.3d 261 (2d Cir. 2003), *cert. den.* 541 U.S. 936, 124 S.Ct. 1658 (2004) (internal cites omitted).

The City "must follow [State] departmental standards. Indeed, they are commanded by statute to do so." McCain v. Koch, 70 N.Y.2d 109, 120, 517 N.Y.S.2d 918, 923 (1987), *citing* N.Y. Soc. Serv. L. § 20[2][a], [b]; [3][a], [d], [f]; § 34[3][d], [e], [f]; Matter of Beaudoin v. Toia, 45 N.Y.2d 343, 347, 408 N.Y.S.2d 417, 419 (1978).

## B. Preference for Placing Children in Kinship Foster Homes

Both federal and New York State law governing placement of children in foster care contain a strong preference for placing children who have been removed from the custody of their parents in the care of relatives rather than strangers, because foster children who are placed with relatives have better outcomes (*See*, Exhibits 2 and 3 to Kubitschek Decl.)

Title IV-E of the Social Security Act requires that states receiving federal funds to administer foster care programs must "consider giving preference to an adult relative over a non-related caregiver when determining a placement for a child." 42 U.S.C. § 671(a)(19) (2006). Similarly, the New York Family Court Act provides that when a child is first removed from his or her parents because of child abuse or neglect, the local child welfare agency must immediately look for relatives who can potentially care for the child and that, if a suitable relative is found, the Family Court must either grant such relative legal custody of the child or, if the relative seeks approval and is approved under New York State regulations, order the child placed with such relative as a kinship foster parent. N.Y. Fam.Ct. Act §§ 1017(1) and (2)(a). To facilitate the preference for kinship placement, the New York Social Services Law and the state's foster care regulations exempt relatives from state foster care certification and licensing requirements and instead provide an expedited process for

7

being approved as a kinship foster parent. See, N.Y. Soc. Serv. L. § 375; 18 N.Y.C.R.R. § 443.7.

Contrary to defendant Carrión's assertion (Def. Mem. p. 5), the regulation does not require that

kinship foster parents agree that children who are blood relatives can be removed at any time.

Finally, New York City's own policy is to "promot[e] more kinship placements. . . ."  (See,

Memorandum from Nicholas Scoppetta to Staff, dated February 8, 2001, attached as Exhibit 1 to

Kubitschek Decl.).

## C.  Removal of Children from Kinship Foster Homes

The New York State statutes concerning removal of children from foster homes are vague

with respect to both the grounds for removing children from kinship foster homes and the procedures

to follow in making said removals, leaving wide discretion in the hands of OCFS and the city,

county, and not-for-profit contract foster care agencies that it supervises. New York Social Services

Law § 383(2) simply provides that a foster care agency "may in its discretion" remove a child from

the foster home, making no distinction between kinship or non-kinship homes. New York Social

Services law §400(1) permits a city or county governmental child welfare agency to "remove [a

foster] child from [an] institution or family home and make such disposition of such child as is

provided by law."

New York Social Services Law § 400 permits kinship and non-kinship foster parents

aggrieved by local child welfare agency decisions to remove children to pursue the state

administrative appeal process provided for under Social Services Law § 22, but only after the

children have been removed. See, N.Y. Soc. Serv. L. § 400(2). Section 22 in turn requires in very

general terms that state administrative hearings be held in appeals of certain adverse decisions by

local social service agencies including, *inter alia*, removals of children from foster homes, and

8

provides for judicial review of such hearing decisions through proceedings in New York Supreme Court. N.Y. Soc. Serv. L. §§ 22(3), (9)(b). However, section 22 is silent as to the procedures to follow and standards to use in conducting and deciding such hearings, and instead authorizes OCFS to "promulgate such regulations, not inconsistent with federal or state law, as may be necessary to implement the provisions of this section." N.Y. Soc. Serv. L. § 22(8).

Meanwhile, OCFS, pursuant to its statutorily-conferred authority and duty to supervise and regulate local government child welfare departments and their contracting foster care agencies' administration of foster care programs (see, N.Y. Soc. Serv. L. §§ 2, 17(a), 20(b),(d), 34(f), 378(5)), has promulgated only one regulation concerning the removal of children from foster homes; 18 N.Y.C.R.R. § 443.5. That regulation, which was promulgated in 1987 and which defendant Carrión continues to implement as OCFS Commissioner, contains no substantive standards to guide decisions by local child welfare departments on when to remove children from foster homes, but instead focuses solely on the procedures the local departments and agencies must follow in executing those removals. Notably, the regulation does not differentiate between kinship and non-kinship foster parents.

As a procedural matter, the regulation requires that when removing a child from a foster home, the local department or contracting foster care agency must provide the foster parent with a written notice of the intention to remove the child, and such notice must advise the foster parent of her right to request a "conference," commonly known as an "Independent Review," with a representative from the city or county child welfare department to review the removal decision. 18 N.Y.C.R.R. § 443.5(a). Such conference must be held prior to the removal itself unless the removal is made on an emergency basis to protect the health and safety of the child, in which case the

9

conference must be held within ten days of the foster parents' request for the conference. In addition, the local child welfare department representative conducting the conference must issue a written decision within five days after the conclusion of the conference. 18 N.Y.C.R.R. §§ 443.5(b)-(d). Beyond these requirements, the regulation does not require any procedural formalities, such as sworn testimony, witness cross-examination, evidentiary rules, or the right to counsel, nor does the regulation set forth any standards to be used in deciding whether to uphold or overrule a removal decision.

New York City provides the most informal conference possible. (See, ACS Independent Review Protocol, Exhibit 7 to Kubitschek Decl.). The person who presides over the conference is a social worker, not a judge or an attorney. The aggrieved foster parent is not allowed to be represented by counsel. She may tell her story and hear what her opponents say, but she is not allowed to cross-examine adverse witnesses. The "Independent" Review Officer who makes the decision is not independent at all, but works for the agency which removed or approved the removal of the children.

If the local governmental child welfare department upholds the decision to remove a child from a kinship or non-kinship foster home, the foster parent may appeal such decision by requesting the aforementioned state administrative hearing, commonly known as a "Fair Hearing," with OCFS. N.Y. Soc. Serv. L. §§ 22, 400(2); 18 N.Y.C.R.R. § 443.5. A foster parent must request such hearing. The hearing is held after the removal of the child from the foster parent's care. N.Y. Soc. Serv. L. § 400(2); 18 N.Y.C.R.R. § 443.5(c) and (d).

Pursuant to her statutory authority and duty as commissioner of OCFS to create procedures and rules for administrative foster care removal hearings (N.Y. Soc. Serv. L. §§ 17(a), 22(8), 34(f);

(Am. Compl. ¶¶35, 7189)), defendant Carrión chose to adopt regulations governing Fair Hearings for foster care removal that do not differentiate between kinship and non-kinship foster parents. (Am. Compl. ¶71). The regulations, contained in 18 N.Y.C.R.R. Part 358, allow the hearing decision to be made by an OCFS employee who is not even present at the hearing and does not hear any witness testimony in person. 18 N.Y.C.R.R. §§ 358-5.6, 358-5.9.

Beyond the aforementioned process, kinship foster parents have no other means under New York law to seek a hearing to contest the removals of child relatives from their care. See, Matter of the Foster Care Status of George Joey S., 194 A.D.2d 328, 329, 598 N.Y.S.2d 229, 329 (1st Dep't 1993); Matter of Dina Michelle S., 236 A.D.2d 544, 545, 653 N.Y.S.2d 677, 678 (2d Dep't 1997). Once a kinship foster parent has had a child relative removed from his or her care, the kinship foster parent is no longer a party to the child's Family Court case and thus has no standing to ask the Family Court to review the removal decision. See, Matter of Foster Care Status of George Joey S., 194 A.D.2d 328, 329, 598 N.Y.S.2d 229, 229 (1st Dept. 1993); N.Y. Fam. Ct. Act § 1089(b). Moreover, the New York Family Court may lack the authority to overturn an administrative decision by a local child welfare commissioner to move a foster child from one foster home to another. See, Matter of James B., 96 A.D.2d 730, 730, 465 N.Y.S.2d 348 (4th Dep't 1983); In re Hasani B., 195 A.D.2d 404, 407, 600 N.Y.S.2d 694, 698 (1st Dep't 1993).

## ARGUMENT

### POINT I

### THE ELEVENTH AMENDMENT DOES NOT BAR PLAINTIFFS' CLAIMS

Defendant Carrión claims that "[a]ctions for monetary relief,[1] declaratory, and injunctive relief against the State or a state agency, brought pursuant to 42 U.S.C. § 1983, cannot be maintained in the district court." (Def. Mem. at 9)  That statement is incorrect as a matter of law.  Likewise incorrect is defendant Carrión's claim that "[a]n unconsenting state is immune from suite in federal court by her own citizens."  (Id. at 8)

**A. The Eleventh Amendment does not bar injunctive relief against defendant Carrión**

It is black letter law that "Congress can abrogate a State's sovereign immunity when it does so pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment to enforce the substantive guarantees of that Amendment." Tennessee v. Lane, 541 U.S. 509, 518, 124 S.Ct. 1978, 1985 (2004).  Therefore, a "state official acting in his official capacity may be sued in a federal forum to enjoin conduct that violates the federal Constitution, notwithstanding the Eleventh Amendment bar."  Dube v. State University of New York, 900 F.2d 587, 595 (2d Cir. 1990) (citations omitted). "[A] suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law . . . is not one against the State, and therefore not barred by the Eleventh Amendment." Ford v. Reynolds, 316 F.3d 351, 354-55 (2d Cir. 2003), *citing* CSX Transp. v. N.Y. State Office of Real Prop. Servs., 306 F.3d 87, 98 (2d Cir. 2002). Thus, a state official may

---

[1]Plaintiffs do not and cannot seek monetary relief against defendant Carrión, but only declaratory and injunctive relief.  If their amended complaint might be read to include a claim for damages against defendant Carrión, plaintiffs did not intend to plead such a claim, and apologize for any confusion that the amended complaint may have generated in that regard.

12

be sued in a lawsuit challenging the constitutionality of his actions if he has "some connection with the enforcement of the act . . . ." Ex parte Young, 209 U.S. 123, 157, 28 S.Ct. 441, 453 (1908).

In Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441 (1908), the Supreme Court ruled that the Eleventh Amendment does not bar actions in federal courts to enjoin state officials from violating the United States Constitution and federal laws. Edelman v. Jordan, 415 U.S. 651, 664, 94 S. Ct. 1347, 1356 (1974) "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." Green v. Mansour, 474 U.S. 64, 68, 106 S. Ct. 423, 426 (1985). Such is the case here. Because state law, N. Y. Soc. Serv. L. § 378, gives the State Commissioner the responsibility to regulate foster care removals, the State Commissioner is responsible for making sure those procedures comply with due process of law. Flowers v. Webb, 575 F.Supp. 1450, 1453 (E.D.N.Y. 1983). It is undisputed that defendant Carrión promulgates the regulations which governed both the removal and detention of J. R. and K.R. from Ms. Iglesias as well as the hearing process, which is her only avenue of appealing the removal. Therefore, the Eleventh Amendment does not bar plaintiff's claim for injunctive relief.

**B. The Eleventh Amendment does not bar declaratory relief against defendant Carrión**

The Declaratory Judgment Act, 28 U.S.C. §2201, grants federal courts the discretion to declare the rights of parties, even where injunctive relief is unavailable. See, Steffel v. Thompson, 415 U.S. 452, 462, 94 S. Ct. 1209, 1217 (1974). Contrary to defendant Carrión's assertions (Def. Mem. at 2), where prospective injunctive relief is available, declaratory judgments are also available. See, Id. at 466-72, 94 S. Ct. at 1219-22. Moreover, declarations that state actions constitute continuing violations of the Constitution or federal laws, even where that judgment declares past conduct unconstitutional, pose no threat to the Young exception and the Eleventh Amendment. See,

13

e.g., Verizon Md., Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 646, 122 S. Ct. 1753, 1761 (2002) (where plaintiff sought declaration of both past and future ineffectiveness of state action, and such declaration did not impose any monetary loss upon the state from past breach of a legal duty, the Eleventh Amendment was no bar); Henrietta D. v. Bloomberg, 331 F.3d 261, 290 (2d Cir. 2003) (where data supported an inference that State Defendant was likely to violate federal law in the future in a manner similar to past violations, the district court was within its discretion to grant declaratory relief); Williston v. Eggleston, 379 F. Supp.2d 561, 578-79 (S.D.N.Y. 2005) ("[W]here Plaintiffs allege an ongoing violation of federal law, prospective relief may take the form of declaratory as well as injunctive relief. A declaration for past wrongs may be appropriate, since such relief does not seek to impose a monetary loss upon the State for past conduct."); Kapps v. Wing, 283 F. Supp.2d 866, 882 (E.D.N.Y. 2003), aff'd in part, vac. on other grounds, 404 F.3d 105 (2d Cir. 2005) (where there is a continuing violation of federal law and constitutional rights, and there is a request for prospective injunctive relief accompanied by a request for declaratory relief which seeks a declaration for past wrongs, and does not seek to impose a monetary loss on the state for past conduct, Green is inapplicable and the Eleventh Amendment poses no bar).

Here, Zoila Iglesias and her grandchildren seek to declare unconstitutional State Defendant's continuing policies, practices and regulations of removing children from kinship foster parents and to enjoin State Defendant from continuing such policies. That prospective relief is precisely the remedy envisioned under Young and its progeny. This Court has jurisdiction to impose such a remedy.

14

## POINT II

### PLAINTIFFS HAVE STATED A CASE OR CONTROVERSY AGAINST DEFENDANT CARRIÓN

Contrary to the allegation of the State Defendant, this case meets the "case or controversy" requirement of Article III. When a state has the ultimate power and responsibility to administer a given public program, it also "has the ultimate responsibility toward the maintenance of [the] due process rights" of those individuals participating in such program, and cannot delegate such responsibility to its municipal agents, even when it has delegated operation of the program to them. Flowers v. Webb, 575 F.Supp. 1450, 1453 (E.D.N.Y. 1983). In Flowers, the court held the Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities (OMRDD) responsible for protecting the due process rights of a mentally retarded child in the care and custody of the City of New York. State law gave OMRDD the responsibility of licensing and regulating programs for the mentally disabled, even though OMRDD had delegated the operation of such programs to its local social service districts, of which the City of New York is one. Id. Moreover, as the Supreme Court noted over forty years ago, "[p]olitical subdivisions of states-counties, cities, or whatever . . . are created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them, and the number, nature, and duration of the powers conferred upon them . . . rests in the absolute discretion of the state." Reynolds v. Sims, 377 U.S. 533, 575, 84 S.Ct. 1362, 1388 (1964) (internal quotations and citations omitted).

Under New York law, it is the State itself that has the power and the duty to regulate and set standards for the operation of all foster care programs in New York State, even though the programs are ordinarily operated by the local social service districts. See, N.Y. Soc. Serv. L. §§ 20(2)(b),

15

20(3)(d), 34(3)(f), and 378(5). Therefore, it is ultimately the responsibility of defendant Carrión, as the commissioner of the New York State Office of Children and Family Services, the state agency that oversees foster care programs, to ensure that the procedures governing foster care removals protect the due process rights of kinship foster parents.

The Eleventh Circuit has noted that "a plaintiff need not wait for an injury to occur. An allegation of future injury satisfies this prong of standing so long as the alleged injury is 'imminent' or 'real and immediate' and not merely 'conjectural' or 'hypothetical.'" 31 Foster Children v. Bush, 329 F.3d 1255, 1265 (11th Cir. 2003), cert. den. sub nom. Reggie B. v. Bush, 540 U.S. 984, 124 S.Ct. 483 (2003). As another judge in the Southern District of New York has stated, "[a] plaintiff may demonstrate that an injury is likely to occur if the plaintiff has been injured previously by a pattern of officially sanctioned conduct." Bray v. City of New York, 346 F. Supp. 2d 480, 487 (S.D.N.Y. 2004), citing Armstrong v. Davis, 275 F.3d 849, 861 (9th Cir. 2001). In considering future injury cases, the Second Circuit has been influenced by two issues. First, "the fact that government studies and statements confirm several . . . key allegations." Baur v. Veneman, 352 F.3d 625, 637 (2d Cir. 2003) (citations omitted). Second, the "alleged risk of harm arises from an established government policy." Id. (citations omitted). In this case, the extensive litigation on the due process violations of state and city policies regarding children in foster care is well documented. As set forth in the accompanying Declaration of Carolyn A. Kubitschek, the City has carried out its and defendant Carrión's policies of removing foster children from their kinship care givers on numerous occasions. Moreover, the risk of future problems arises because of said policies.

The three plaintiffs here have already suffered from the unconstitutional policy of defendant Carrión, and may suffer from it again. Nor are they the only family to have fallen victim to the state

16

Case 1:08-cv-01595-AKH    Document 21    Filed 06/10/2008    Page 25 of 40


regulations. There are currently pending in this Court at least five other cases in which kinship foster families have suffered the same separation without adequate remedy. See, generally, Kubitschek Decl.

As long as defendant Carrión's regulations remain in force, Ms. Iglesias is in danger of losing J.R. and K.R. again. Ms. Iglesias lives with the constant fear that city workers, acting pursuant to state policy directives, will unconstitutionally remove her children from her and that, as was the case four months ago, she will have no recourse to be re-united with her children.

In the instant case, as defendant Carrión states, the injury to Mrs. Iglesias and her grandchildren is both "fairly traceable to the defendant's . . . unlawful conduct and likely to be redressed by the requested relief." (Def. Mem. at 11). State Defendant claims that it is "speculative whether the desired exercise of the court's remedial powers . . . would result in" relief to the plaintiffs. (Def. Mem. at 12). That assertion is simply untrue. City and agency defendants removed and detained infant plaintiffs from Ms. Iglesias without due process of law, i.e., without any hearing whatsoever, because the State Commissioner, their superior, has issued regulations which authorize such a due process violation. If this Court orders defendant Carrión to obey the Constitution, then her agents, the City of New York, will be obliged to do so as well, and will have no excuse for failing to do so.

As there is a case or controversy under Article III, the Motion to Dismiss of defendant Carrión must be denied.[2]

_____

[2]Defendant argues (Def. Mem. p. 13) that the children were removed by police officers and not child welfare workers. That allegation is contrary to the allegations in the complaint which must be accepted for the purposes of this motion. The City's Administration for Children's Services, which operates under the supervision and regulations of defendant Carrión, removed the grandchildren from Mrs. Iglesias at the precinct. (Am. Cmp. ¶¶50, 54, 55).

## POINT III

## THE COMPLAINT SATISFIES PLEADING REQUIREMENTS

Defendant Carrión contends that plaintiffs' amended complaint does not plead any of the types of personal involvement with sufficient particularity to satisfy what she characterizes as the heightened pleading standard established by the Supreme Court in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955 (2007). (Def. Mem. at 14).  However, Twombly did not impose a heightened pleading standard upon civil rights plaintiffs. Indeed, the Supreme Court stated explicitly that "we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9, which can only be accomplished by the process of amending the Federal Rules, and not by judicial interpretation." Id. at 1973 n. 14 (citations omitted). As the Supreme Court subsequently held, the rules requires only a "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, ___ U.S., ___, ___, 127 S.Ct. 2197, 2200 (2007).  The plaintiff must provide only "fair notice of what the . . . claim is and the grounds upon which it rests." Id., citing Twombly, supra, at 1959.

The Second Circuit, interpreting Twombly, requires a pleading standard only of "plausibility," which merely "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).  Thus, if plaintiffs' allegations regarding defendant Carrión's involvement in the constitutional violations are "entirely plausible," there is no need for "additional subsidiary facts" in order to withstand a motion to dismiss. Id. at 165-66; see, also, Finch v. New York State Office of Children and Family Serv's, No. 04 Civ. 1668, 2007 WL 1982752, *9 (S.D.N.Y. July 3, 2007) (Denying motion to dismiss for lack of personal involvement in alleged

18

constitutional violations by OCFS Commissioner where "complaint set[] forth a viable theory of supervisory liability").

Here, plaintiffs plead defendant Carrión's liability with sufficient particularity and plausibility. She is responsible, as Commissioner of OCFS, for "the administration, regulation, and supervision of the foster care system in the State of New York," and "for providing training to employees of the local child welfare agencies with regard to the foster care of children" (Am. Compl. ¶35). Commissioner Carrión has promulgated regulations regarding the removal of children from foster parents, including 18 N.Y.C.R. §443.5, which are unconstitutional as applied to kinship foster parents, in that they fail to provide those kinship foster parents, and their kinship foster children, with due process prior to, or promptly after, removing the children from the homes of the relatives for reasons other than reunifying the children with their parents. (See, Am. Cmp. ¶¶67, 89-93, 96). Indeed, the amended complaint lists ten reasons why defendant Carrión's regulations violate the due process rights of kinship foster parents and their children. Id. at ¶102(a-j).

Taken together, these pleadings, which included specific facts, give defendant Carrión ample notice about the claim for violation of the due process rights of the plaintiff and infant plaintiffs and of the grounds upon which the claim rests.

19

## POINT IV

## PLAINTIFF ZOILA IGLESIAS AND HER GRANDCHILDREN HAVE CONSTITUTIONALLY PROTECTED LIBERTY INTERESTS IN THEIR MUTUAL FAMILY RELATIONSHIP

### A. Plaintiff's biological and custodial relationship with her grandchildren, and theirs with her, are constitutionally-protected liberty interests

In Rivera v. Marcus, 696 F.2d 1016 (2d Cir. 1982), the Second Circuit held that a relative who was also providing foster care as a kinship foster parent had a constitutionally protected liberty interest in preserving the integrity and stability of her family, and that the children could not be removed from her care without due process. In making its determination, the court recognized that such a situation was a hybrid and that, as a relative, Ms. Rivera shared characteristics of both a natural parent and of a foster parent. Id. at 1017. Thus, it examined Supreme Court precedent addressing the liberty interests of natural parents and relatives, as well as those of unrelated foster parents. Id. at 1021-25. The Second Circuit concluded that, based on her biological relationship and the nature and importance of extended family, Ms. Rivera had a fundamental constitutional right in maintaining the integrity and stability of her extended family and was entitled to due process protection of that right. Id. at 1026. The Second Circuit explicitly rejected the state's view, adopted by defendant Carrión here (Def. Mem. at 13-15), that Ms. Rivera should be viewed for constitutional purposes solely as a foster parent with rights narrowly circumscribed by a foster care agreement. Id. at 1023.

Contrary to State Defendant's assertions. (Def. Mem. at 15), plaintiffs, in relying on Rivera, do not ignore Smith v. Organization of Foster Families, 431 U.S. 816, 97 S.Ct. 2094 (1977). Nor did the Rivera court. Rather, the Second Circuit reviewed and adopted the core principles enunciated

in <u>Smith</u>, and considered them together with other relevant Supreme Court cases which determined

that the fundamental constitutional liberty interest in the care and companionship of children is not

limited to parents, siblings, or even to grandparents, but extends to other relatives.

Over a half century ago, the Supreme Court affirmed that a custodial aunt had a

constitutionally-protected liberty interest in the care and companionship of her niece. <u>Prince v.</u>

<u>Massachusetts</u>, 321 U.S. 158, 64 S.Ct. 438 (1944). Thirty-three years later, the Court, in holding

unconstitutional a municipal land-use ordinance that barred a grandmother and her two grandsons

(who were cousins) from living together, declared:

> Ours is by no means a tradition limited to respect for the bonds uniting the members
> of the nuclear family. The tradition of uncles, aunts, cousins, and especially
> grandparents sharing a household along with parents and children has roots equally
> venerable and equally deserving of constitutional recognition. . . . Whether or not
> such a household is established because of personal tragedy, the choice of relatives
> in this degree of kinship to live together may not lightly be denied by the state.

<u>Moore v. City of East Cleveland</u>, 431 U.S. 494, 505-06, 97 S.Ct. 1932, 1938-39 (1977).

In deciding <u>Rivera</u>, the Second Circuit determined that <u>Smith</u> did not apply to kinship foster

care because none of the three factors the Supreme Court set forth in <u>Smith</u> were present in Ms.

Rivera's case:

> First, there is generally no biological relationship between foster parents and the
> children in their care. Moreover, while the natural family has its origins separate and
> apart from state law, the source of the foster family relationship is contractual in
> nature and is carefully circumscribed by the state in the foster care agreement.
> Finally, there is the virtually unavoidable tension between protecting the interests of
> the natural parents while also extending familial rights in favor of foster parents.

> <u>Rivera</u>, *supra*, at 1024 (citing <u>Smith</u>, 431 U.S. at 847).

Then, to illustrate how these differences were present in the case before it, the court noted that Ms.

Rivera and her half-siblings had lived together as a family for several years before the foster care

21

agreement was consummated. Rivera, *supra*, at 1024. Nowhere did the court state that constitutionally protected biological familial relationships only exist when there is co-habitation. All that is required is that the relationship have "its origins separate and apart from state law." Id.

As in Rivera, the fact that Ms. Iglesias is also a foster parent does not negate her constitutional liberty interest in maintaining the integrity and stability of her extended family. Like Ms. Rivera, she is biologically related to J.R. and K.R.; she is their grandmother. She was their grandmother long before she became their foster mother and her relationship with them is neither contractual nor has its origins in state law. Like Ms. Rivera, there is no conflict between her constitutional liberty interest and the constitutional claims of the birth parents.

It has been repeatedly held that grandparents and other close blood relatives who care for children as kinship foster parents have a liberty interest continuing to care for those children; and the children have a reciprocal liberty interest in being cared for by the relatives. Rivera v. Marcus, 696 F.2d 1016 (2d Cir. 1982); Johnson v. City of New York, No. 99 Civ. 0048, 2003 WL 1826122 *7 (S.D.N.Y. 2003); ); Harley ex rel. Johnson v. City of New York, 36 F.Supp.2d 136, 140 (E.D.N.Y. 1999) Haynes v. Mattingly, 06 Civ. 1383 (TPG); Rivera v. Mattingly, 07 Civ. 7077 (TPG), (See Exhibit 10 to Kubitschek Decl.). Even in Balbuena v. Mattingly, 2007 WL 2845031 (S.D.N.Y. 2007), cited by defendant Carrión, the judge noted that in Rivera "[t]he court concluded, based on numerous authorities, that the relationship between a kinship foster parent and a child can surely be a family relationship. . . . [t]he main factors would be the biological relationship between the parties and the degree to which a bond had been established. Id. at *6. The judge went on to find that Ms. Balbuena and her nieces had a liberty interest in remaining together. However, the judge found as

22

a factual matter, unique to that particular case, that Ms. Balbuena had the due process appropriate in connection with the removal of her nieces from her care. Id. at *7 and *10.

Defendants' mistake is in urging this Court that it must decide between Smith and Rivera; that both decisions cannot be correct. In fact, the two cases address two completely different situations. Defendant also misapprehends the doctrine of *stare decisis*. The Second Circuit, in deciding Rivera, was bound by, and explicitly considered, Smith, and found that foster parents who are close blood relatives have constitutional rights to continue caring for children, which non-kinship foster parents lack. Rivera at 1024-1025. That decision "continues to be the law of this Circuit, binding upon both the district court and [the Second Circuit], and can only be overruled by [the Second Circuit] sitting in banc or by a decision of the Supreme Court." Gold v. Feinberg, 101 F.3d 796, 801 (2d Cir. 1996).

In attempting to distinguish this case from Rivera, defendants Carrión reads the decision in Rivera far too narrowly. Defendant Carrión incorrectly argues that because Ms. Iglesias does not allege that she cared for the children as a "surrogate mother" before their birth mother was committed to a hospital, as did plaintiff in Rivera, that the Second Circuit's holding is inapplicable. (State Mem. at 16). State Defendant is factually and legally incorrect. As a factual matter, both J.R. and K.R. came to live with Ms. Iglesias before she became their foster mother. (See Iglesias Decl. ¶¶18, 19, 20, 23, 24, 26, 27).

Moreover, it is legally insignificant whether or not Ms. Iglesias signed a foster parent agreement before or after she began caring for her grandchildren. The constitutionally-protected liberty interest depends on the close blood relationship between the adult and child, not on any contract. Unlike defendant Carrión, the Second Circuit reads its own decision broadly, stating that

23

Rivera "recogniz[es] [the] protectable liberty interest of [a] foster parent who was related biologically to her foster children. . . ." Rodriguez v. McLoughlin, 214 F.3d 328, 337 (2d Cir. 2000), *cert. den.* 532 U.S. 1051 (2001).

Although the length of time that the foster family has lived together may be a factor in the weighing of constitutional interests, there is no fixed length of time requirement that such family must meet to be entitled to constitutional protection; rather, family relationships, like all constitutionally-protected liberty interests, must be viewed along a rational continuum. See, Moore, 431 U.S. at 502, 97 S.Ct. at 1937 (emphasizing that the Supreme Court's due process jurisprudence does not require "cutting off any protection of family rights at the first convenient, if arbitrary, boundary. . . ."). Here, Ms. Iglesias has lived with, and cared for, the infant plaintiff grandchildren for more than three years. The Constitution thus recognizes and protects her family relationship.

## B. The Foster Care Agreement Does Not Sever Plaintiffs' Liberty Interest in Each Other

As the Supreme Court has stated, "The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 573 (1925). Because of that relationship, "the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442 (1944).

The fact that the grandparent who cares for the child also has a foster care agreement with a foster care agency does not eliminate the basic blood relationship and the constitutional right to live together, which is one of the "basic civil rights of man." Stanley v. Illinois, 405 U.S. 645, 651.92 S.Ct. 1208, 1212 (1972). It is a right "far more precious . . . than property rights." May v.

24

Anderson, 345 U.S. 528, 533, 73 S.Ct. 840, 843 (1953). In the instant case, Ms. Iglesias cared for her other two grandchildren (R.R. and A.Q.) as custodian, without a foster care contract. Those children received due process, belatedly, and were ordered by the state court to be returned to their grandmother. The fact that a grandchild may be receiving foster care funds should not deprive that child of his constitutional rights, as defendants deprived J.R. and K.R. of their constitutional rights.

## POINT V

## STATE DEFENDANTS' REGULATIONS DEPRIVE
## PLAINTIFF AND INFANT PLAINTIFFS OF DUE PROCESS

### A. Plaintiffs Are Entitled to Due Process of Law

Because plaintiff has a constitutionally-protected liberty interest in her relationship with her grandchildren (*see* Point IV, *supra*), she is entitled to due process of law in connection with the government's removal of the grandchild from her. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208 (1972); Duchesne v. Sugarman, 566 F.2d 817 (2d Cir. 1976); Rivera v. Marcus, 696 F.2d 1016 (2d Cir. 1982). Likewise, the infant plaintiffs also have a constitutionally-protected liberty interest in being cared for by their grandmother, who has care for them for three years. *See*, Tenenbaum v. Williams, *supra*, 193 F.3d 581, 600 (2d Cir. 1999) *cert. den.* 529 U.S. 1098 (2000). In cases in which it is impossible to provide a pre-deprivation hearing, the government must provide parents and children with prompt post-deprivation hearings. Tenenbaum v. Williams, 193 F.3d 581 (2d Cir. 1999), *cert. den.* 529 U.S. 1098 (2000).

Defendant Carrión's regulations and procedures failed to provide plaintiffs with either meaningful notice or an opportunity to be heard, which are the basic tenets of due process. Indeed, because there is a liberty interest at stake here, the government cannot "adopt for itself an attitude of 'If you don't like it, sue.'" Duchesne v. Sugarman, 566 F.2d 817, 828 (2d Cir. 1976). On the contrary, the "burden of initiating judicial review must be shouldered by the government. We deal here with an uneven situation in which the government has a far greater familiarity with the legal procedures available for testing its action." Duchesne v. Sugarman, 566 F.2d 817, 828 (2d Cir.

26

1976). By promulgating regulations which permit the government to sit back and take no action when it removes children from their blood relatives, defendant Carrión has violated the Constitution.

Instead, defendant Carrión provides a two-step approach for kinship foster parents who want to contest the removal of their foster children, as set forth in detail in subsection C of the "Statutory and Regulatory Scheme," *supra*. Both steps are constitutionally inadequate.

## B. The Conference held by Defendant City under Defendant Carrión's Regulations is Inadequate and Defendant Carrión's Regulations are Facially Insufficient.

The regulation governing the first step of the process (18 N.Y.C.R.R. § 443.5) fails on its face to satisfy several of the basic due process requirements enumerated in <u>Rivera</u>. It provides for (a) a conference rather than a formal hearing, with no sworn testimony and no opportunity for an aggrieved kinship foster parent to confront or cross-examine witnesses; (b) although denominated an "Independent Review" by defendant City, the decision-maker is not a neutral arbiter but a City employee who is charged with determining whether his or her employer, the City, (or its authorized contract agency), was correct in effecting the removal; (c) a delayed hearing and delayed decision.

### 1. Due Process requires an actual hearing, not a conference.

A meeting is no substitute for a hearing, and simply does not satisfy the requirements of due process of law. <u>Patterson v. City of Utica</u>, 370 F.3d 322, 337 (2d Cir. 2004). The fundamentals of due process require that there be a hearing, presided over by an impartial desicionmaker, at which witnesses are sworn and cross-examined. In <u>Rivera</u>, 696 F.2d at 1027, the Second Circuit held that the state panel presiding over foster care removal administrative review proceedings, which consisted of two employees of State Welfare Department and one employee of the agency that contracted with State Welfare Department, was not an impartial decisionmaker. Under defendant

Carrión's regulatory scheme, there is only one arbiter and that person is employed by defendant City, which provides less due process than provided to plaintiff in <u>Rivera</u>.

### 2. Delay in the Provision of the Conference Violates Due Process

The Supreme Court has specified that whether or not the delay of a post-deprivation hearing is a violation of due process depends on "the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for the delay and its relation to the underlying government interest; and the likelihood that the interim decision may have been mistaken." <u>FDIC v. Mallen</u>, 486 U.S. 230, 242, 108 S.Ct. 1780, 1788 (1988). A person deprived of a liberty interest is entitled to a post-deprivation hearing held at "a meaningful time." <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552, 85 S.Ct. 1187 (1965); <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 547, 105 S.Ct. 1487 (1985)(*quoting* <u>Armstrong</u>).

All circuits which have ruled on the issue have agreed that when a state separates children from their families, due process requires either a pre-deprivation hearing or a prompt post-deprivation hearing, i.e., hearing within a very short time after the separation. Thus, in <u>Swipies v. Kofka</u>, 419 F.3d 709, 715 (8th Cir. 2005), the Eighth Circuit ruled that "Mr. Swipies was deprived of the opportunity to be heard at a meaningful time because the hearing occurred seventeen days after the removal" of his children. *Accord*, <u>Whisman v. Rinehart</u> 119 F.3d 1303, 1310 (8th Cir. 1997) (17-day delay violates due process); <u>Brown v. Daniels</u>, 128 Fed.Appx. 910, 915 (3d Cir. 2005) ("Although there is no bright-line rule for deciding whether a post-deprivation hearing is sufficiently 'prompt,' the delay should ordinarily be measured in hours and days, as opposed to weeks," holding that a delay of seven weeks between the removal of a child and the hearing to contest the removal violated due process) (*citing* <u>Tower v. Leslie-Brown</u>, 326 F.3d 290, 299 (1st Cir. 2003)); <u>Berman</u>

28

v. Young, 291 F.3d 976, 985 (7th Cir. 2002) (ruling that a 72 day delay was not "prompt"); Dupuy

v. Samuels, 397 F.3d 493, 509 (7th Cir. 2005) (holding that due process requires an administrative

hearing and determination to clear an individual's name within 35 days of the time a report of

suspected child abuse is marked "indicated" and placed on the Illinois State Central Register).

In the instant case, the regulation allows the foster care agency or defendant City to remove

kinship foster children without a hearing under a claim of health or safety (18 N.Y.C.R.R. §

443.5(a)(1)), and then requires the kinship foster parent to request the conference, wait up to ten days

for a conference, and then wait at least five days more for a decision.

The case cited by State Defendant, New York State Nat. Org. of Women v. Pataki, 261 F.3d

156 (2d Cir. 2001), for the proposition that similarly long delays in adjudicating administrative

hearings was not a violation of procedural due process, involved property interests, specifically legal

causes of action for discrimination, which are entitled to less due process protection than the

fundamental liberty interest at issue here. See, Zinermon v. Burch,  494 U.S. 113, 110 S.Ct. 975

(1990).

## C. The Administrative Hearing held by Defendant Carrión's is Inadequate and Defendant Carrión's Regulations are Facially Insufficient.

### 1. Delay in the Hearings.

Defendant Carrión's Administrative Hearings are not held until after the kinship foster child

has been removed and until after the City has held and decided its "Independent" Review. The delay

can therefore run to months. (See, discussion of delays in the hearings for Mable and Anthony

Rivera and for Alice Haynes, Kubitschek Decl. ¶¶ 29-38, 39-47). Therefore, the process by which

job of raising a child as foster parent." Id. at 17. Thus, for a kinship foster parent, the entire administrative process is an exercise in futility, because it provides no remedy. Kinship foster parents seek the return of their young relatives and the reuniting of their family. They are not seeking the possibility of obtaining other, unrelated, foster children. Kinship foster parents do not care for children as a job; they do so because of the family bonds.

It has long been a guiding principle of the American legal system that there must be a meaningful remedy for every violation of a legal right. As Chief Justice Marshall declared in Marbury v. Madison, 5 U.S. (1 Cranch) 137, 163 (1803):

> The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection. . . "[I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded. . . The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.

Constitutional due process requires, at a minimum, a hearing which will "wipe[] the slate clean"and "restore[] the petitioner to the position he would have occupied. . . ." Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191 (1965). The Supreme Court has repeatedly held that the Due Process Clause requires states to provide an individual with a minimally adequate remedy that provides "meaningful" relief "to rectify any unconstitutional deprivation." Harper v. Virginia Dept. of Taxation, 509 U.S. 86, 101, 113 S.Ct. 2510, 2519 (1993); see, also, McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco, 496 U.S. 18, 39, 110 S.Ct. 2238, 2251 (1990); Reich v. Collins, 513 U.S. 106, 108, 114, 115 S.Ct. 547, 548, 551 (1994).

31

Thus, Defendant Carrión, as commissioner of OCFS, has a constitutional obligation to provide a meaningful remedy for kinship foster parents and their children, such as plaintiffs, who have been wrongfully separated from each other.  Because the procedure established by defendant Carrión does not provide such meaningful remedy, she has violated plaintiffs' procedural due process rights.

32

## CONCLUSION

For the reasons stated above, plaintiffs request that the Court deny defendant Gladys

Carrión's Motion to Dismiss in its entirety.

Dated: New York, New York
        June 10, 2008

Carolyn A. Kubitschek (CK6415)
Lansner & Kubitschek
Attorneys for Plaintiffs
325 Broadway, Suite 201
New York, NY 10007
(212) 349-0900
ckubitschek@lanskub.com

33